# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00767-CR

**Bradley Robert Dyar, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
### NO. 31,791, HONORABLE M. BENTON ESKEW, JUDGE PRESIDING

Bradley Robert Dyar was charged with driving while intoxicated and entered a plea of *nolo contendere*. The trial court sentenced him to 180 days' confinement in county jail and imposed a $750 fine. Dyar appeals on the ground that the trial court erroneously denied his motion to suppress a blood sample taken pursuant to an arrest he alleges was illegal. We hold that the arrest was lawful under article 14.03(a)(1) of the Texas Code of Criminal Procedure and will affirm the trial court's orders. *See* Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (West Supp. 2001).

## BACKGROUND

Just after midnight on New Year's Eve 1999, Dyar had a one-car accident in Smithville, while driving from Austin to Houston. Texas Department of Public Safety Trooper Tony Thompson responded to the accident, arriving after Dyar had been transported to the hospital. Thompson observed that the vehicle had left the roadway and landed upside down.

Thompson went to the hospital to speak with Dyar, who was in the emergency room with a visible head injury. Thompson found Dyar's speech to be intelligible but slurred. Dyar stated that he had been "partying" with friends in Austin. He said he had intended to rent a room in Austin, but at the last minute, decided to drive home to Houston. Thompson smelled alcohol on Dyar and Dyar admitted to drinking alcohol that night. Thompson was aware that Dyar was under twenty-one years of age and so his combined consumption of alcohol and driving was, at minimum, a Class C misdemeanor. Thompson then read Dyar both the *Miranda* warnings and the DWI statutory warning, placing him under arrest. After receiving the warnings, Dyar consented to a blood test. A blood sample was taken and sent to the crime laboratory.

Dyar was charged by information with driving while intoxicated on the morning of January 1, 2000. Dyar moved to suppress the blood specimen, asserting that it was obtained pursuant to an illegal arrest. After a pre-trial hearing, the trial court denied the motion, and subsequently Dyar entered a plea of *nolo contendere*. The court sentenced him to 180 days' confinement at the Bastrop County jail, but suspended the imprisonment and placed Dyar on community supervision for two years. The court ordered him to pay a fine of $750, restitution of $64.92, and perform 100 hours of community service.

On appeal, Dyar asserts that the trial court erred by refusing to grant his motion to suppress evidence. Dyar argues that the arrest was illegal because it was warrantless and none of the statutory exceptions to the warrant requirement apply; therefore, the blood specimen should be suppressed.

**DISCUSSION**

A trial court's ruling on a motion to suppress is generally reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). However, when the trial court's ruling is not grounded in factual evaluations, we review the trial court's decision *de novo*. *Id.* The trial court's decision on the legality of Dyar's arrest was based on undisputed facts; thus we review the orders *de novo*. *See id.*

This case involves a warrantless arrest. As a general rule, a police officer must obtain an arrest warrant before taking an individual into custody. *Dejarnette v. State*, 732 S.W.2d 346, 349 (Tex. Crim. App. 1987). Warrantless arrests are illegal unless authorized by one of the statutory exceptions to the rule. *Id.* Chapter 14 of the Code of Criminal Procedure authorizes arrest without a warrant in limited circumstances. *See* Tex. Code Crim. Proc. Ann. arts. 14.01, .02, .04 (West 1977) & art. 14.03 (West Supp. 2001).

In his sole issue presented, Dyar argues that the trial court erroneously denied his motion to suppress the blood specimen. He asserts that none of the exceptions in chapter 14 will justify his arrest. Therefore, Dyar contends that the warrantless arrest was illegal and the resulting blood specimen should be suppressed.

The State, however, relies on article 14.03(a)(1) to authorize the arrest. *See id.* art. 14.03(a)(1). That article provides:

> Any peace officer may arrest, without a warrant: *persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of* some felony, violation of Title 9, Chapter 42, Penal Code, *breach of the peace*, or offense under Section 49.02, Penal Code, or threaten, or are about to commit some offense against the laws; . . . .

*Id.* (emphasis added).

3

Dyar objects to the application of this provision to authorize his warrantless arrest. He notes that this article only permits the warrantless arrest of "persons found in suspicious places." Dyar argues that a hospital is not a "suspicious place." Because he was first encountered by the trooper at a hospital, where he was placed under arrest, Dyar argues that this statutory exception does not apply.

Texas courts have not interpreted article 14.03(a)(1) so rigidly. Very few places are suspicious *per se. Johnson v. State*, 722 S.W.2d 417, 421 (Tex. Crim. App. 1986.) A place may become "suspicious," however, based on the surrounding circumstances. *Id.* The facts available to the arresting officer at the time, and reasonable inferences drawn from those facts, may render a place suspicious so as to invoke article 14.03(a)(1). *Muniz v. State*, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993); *Johnson*, 722 S.W.2d at 421.

In fact, article 14.03(a)(1) requires the legal equivalent of probable cause. *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991); *see Johnson*, 722 S.W.2d at 421. In Texas, probable cause for a warrantless search and seizure is determined by the totality of the circumstances. *Torres v. State*, 868 S.W.2d 798, 801 (Tex. Crim. App. 1993); *Amores*, 816 S.W.2d at 413; *Johnson*, 722 S.W.2d at 421. Accordingly, Texas courts have held that an otherwise innocent locale can be a "suspicious place" for the purposes of article 14.03(a)(1) based on the totality of the circumstances. *See Muniz*, 851 S.W.2d at 251 (concluding closet was suspicious place when circumstances showed its inhabitant had committed felony and was hiding therein); *Crowley v. State*, 842 S.W.2d 701, 703 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (concluding garage could be classified as suspicious place when circumstances indicated someone involved in hit and run accident was hiding inside); *State v. Parson*, 988 S.W.2d 264, 268 (Tex. App.—San Antonio 1998, no pet.) (concluding "suspicious place" requirement was satisfied when defendant was found in front yard of residence

4

after being involved in hit and run accident). Thus, the cases have examined the *circumstances* surrounding the offense to determine whether the situs of the arrest qualified as a "suspicious place."

"The determination of whether a place is a 'suspicious place' is highly fact-specific." *Holland v. State*, 788 S.W.2d 112, 114 (Tex. App.—Dallas 1990, pet. ref'd) (citation omitted). The application of 14.03(a)(1) to the instant case requires an inquiry into the facts available to Thompson and any reasonable inferences that can be drawn from those facts. *See Muniz,* 851 S.W.2d at 251; *Johnson*, 722 S.W.2d at 421. At the time of the arrest, Thompson knew that there were no other cars involved in the accident and that it occurred just after midnight on New Year's Eve. He knew that Dyar's vehicle left the roadway and landed upside down. At the hospital, Thompson smelled alcohol on Dyar and noticed that Dyar's speech was slurred. Dyar, a minor, told Thompson that he had been "partying" with friends in Austin and had been drinking alcohol.[1] Therefore, Thompson knew Dyar had at least committed a Class C misdemeanor. *See* Tex. Alco. Bev. Code Ann. § 106.041(a), (b) (West Supp. 2001).

Thompson reasonably inferred from those facts that alcohol was likely a factor in the accident. Driving while intoxicated is a breach of the peace, and Dyar does not contend otherwise. *See Romo v. State,* 577 S.W.2d 251, 253 (Tex. Crim. App. 1979); *Cooper v. State*, 961 S.W.2d 229, 232 (Tex. App.—Houston [1st Dist.]1997, pet. ref'd). The totality of the circumstances created a reasonable suspicion that Dyar was guilty of that offense. *See Amores*, 816 S.W.2d at 413; *Johnson*, 722 S.W.2d at 421. Dyar focuses on the hospital where the arrest occurred. He argues that a

---

[1] Texas Department of Public Safety Sergeant Mark Spillers also went to the hospital and questioned Dyar. Spillers corroborated that Dyar had slurred speech and smelled of alcohol. He also noted that Dyar had red, glassy eyes. However, Spillers arrived after Thompson had already advised Dyar he was under arrest. Therefore, Spillers's observations are not a factor to be considered in the legality of the arrest.

hospital is not a "suspicious place." While we do not view a hospital as a "suspicous place" *per se*, this argument overlooks the totality of the circumstances and the fact that Dyar was taken involuntarily from the accident scene to the hospital. We believe that the accident scene itself *coupled* with Thompson's observations at the hospital constituted the "suspicious place" or the "suspicious circumstances" leading to Dyar's lawful arrest. Thus, the circumstances surrounding his arrest were sufficient to determine that Dyar was in a "suspicious place," as required by article 14.03(a)(1), and "under circumstances which reasonably show that such [person has] been guilty of some . . . breach of the peace." *See* Tex. Code Crim. Proc. Ann. art. 14.03(a)(1).

## CONCLUSION

The circumstances surrounding Dyar's accident invoked article 14.03(a)(1) of the Texas Code of Criminal Procedure and justified Trooper Thompson's decision to arrest him. *See id*. Because we hold that the arrest was legal, the blood specimen taken pursuant to that arrest is untainted. We affirm the trial court's orders.

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: July 26, 2001

Publish

6