**Bradley Robert DYAR, Appellant,**

v.

**The STATE of Texas.**

No. 1794–01.

Court of Criminal Appeals of Texas.

April 23, 2003.

Keith S. Hampton, Austin, for appellant.

Sarah Wannarka, Assist. D.A., Bastrop, Matthew Paul, State's Attorney, Austin, for state.

PRICE, J., delivered the opinion of the Court, in which MEYERS, WOMACK, JOHNSON, HOLCOMB, and COCHRAN, JJ., joined.

The issue on this appeal is whether the appellant's warrantless arrest was made while the appellant was in a "suspicious place" and therefore, authorized under Article 14.03(a)(1) of the Texas Code of Criminal Procedure. The appellant was charged with driving while intoxicated. Before trial, the appellant moved to suppress the blood specimen, asserting that it was obtained pursuant to an illegal arrest. After a pre-trial hearing, the trial court denied the motion and the appellant entered a plea of *nolo contendere.* The Third Court of Appeals held that the arrest was legal and that the blood specimen taken pursuant to that arrest was untainted. *Dyar v. State,* 59 S.W.3d 713, 717 (Tex.App.-Austin 2001). We affirm.

## FACTS

The appellant was in a one-car accident in Smithville, Texas, around midnight on New Year's Eve, 2000. The appellant, the lone occupant of the vehicle, was taken to Smithville Hospital before the police responded to the accident scene. After arriving at the scene of the accident, Trooper Thompson observed that the appellant's vehicle had left the road and landed upside down. Trooper Thompson went to the hospital emergency room to speak with the appellant about the accident. The appellant told the trooper that he had been partying in Austin for New Year's Eve and

was attempting to drive back to Houston. The appellant admitted to drinking alcohol and driving. The trooper noticed that the appellant had slurred speech, red glassy eyes, a strong smell of alcohol, and that many of the appellant's answers were unintelligible.

Based on the above information, coupled with the details of the accident, Trooper Thompson believed that he had established probable cause. Trooper Thompson read the appellant his Miranda warnings and the DWI statutory warning and arrested the appellant for driving while intoxicated. The appellant consented to providing a sample of his blood.

The appellant was charged by information with driving while intoxicated. The appellant moved to suppress the blood specimen, claiming that it was obtained pursuant to an illegal arrest. The trial court denied the appellant's motion finding that, due to the facts and circumstances known to Trooper Thompson on that night, it was reasonable to conclude that the appellant had committed a breach of the peace. *See* Tex.Code Crim. Proc. art. 14.03(a)(1).

The appellant entered a plea of *nolo contendere*. The trial court sentenced the appellant to 180 days confinement in the county jail, but suspended the sentence and placed the appellant on community supervision for two years. The trial court ordered the appellant to pay a $750 fine, to pay restitution of $64.92, and to perform 100 hours of community service.

On appeal, the appellant noted that Article 14.03(a)(1) permits the warrantless arrest only of persons found in "suspicious places." *Dyar v. State*, 59 S.W.3d 713, 715 (Tex.App.-Austin 2001). The appellant argued that the hospital where he was arrested is not a "suspicious place." *Ibid.* Under the totality of the circumstances test, the Third Court of Appeals found that the accident scene coupled with Trooper

Thompson's observations at the hospital constituted the "suspicious place" leading to the appellant's lawful arrest. *Id.* at 717.

## DISCUSSION

■ Generally, a trial court's ruling on a motion to suppress is reviewed under an abuse of discretion standard. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim. App.1985). However, the instant case presents us with a question of law based on undisputed facts, thus we perform a de novo review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

■ The appellant claims that the Court of Appeals erred when it held that the appellant's warrantless arrest was authorized by Article 14.03(a)(1) of the Texas Code of Criminal Procedure. The article in question provides in part:

a) any peace officer may arrest, without warrant:

1) persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code, or threaten, or are about to commit some offense against the laws.

Tex.Code Crim. Proc. art. 14.03(a)(1). Specifically, the appellant argues that the hospital where he was arrested was not a suspicious place under the above Article. Moreover, the appellant claims that the courts, in interpreting the above Article, have not given meaning to "suspicious places."

The Fourth Amendment to the United States Constitution imposes certain requirements upon arrests and other "seizures" of the person. George E. Dix & Robert O. Dawson, 40 Texas Practice § 7.11, at 443 (2d ed.2001). But there is

no general requirement of a warrant, and there is nothing in the United States Supreme Court's prior case law indicating that, under the Fourth Amendment, a warrant is required to make a valid arrest. *United States v. Watson*, 423 U.S. 411, 416–17, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

As for the Texas Constitution, this Court recently stated:

> It is our holding that Article I, Section 9 of the Texas Constitution contains no requirement that a seizure or search be authorized by a warrant, and that a seizure or search that is otherwise reasonable will not be found to be in violation of that section because it was not authorized by a warrant.

> This is not to say that statutes which require warrants for seizure or search may be ignored. Nor do we say that the issuance of a warrant by a neutral magistrate may not be a factor in the totality of circumstances by which we judge whether a seizure or search was reasonable.

*Hulit v. State*, 982 S.W.2d 431, 436 (Tex. Crim.App.1998).

■ Texas statutory law imposes a number of requirements beyond those mandated by the federal constitution. George E. Dix & Robert O. Dawson, 40 Texas Practice § 7.11, at 444 (2d ed.2001). Most significantly, Texas law imposes a general requirement—subject to exception—that arrests be made pursuant to arrest warrants. *Ibid.* Because warrantless arrest are permissible only when authorized by statute, Texas statutory law deals extensively with officers' power to make warrantless arrests. *Ibid.*

The Texas Legislature has acknowledged that certain circumstances justify the use of arrest powers even though a warrant has not been issued. Texas courts have interpreted these statutes as requiring that a warrant be obtained before an arrest is made, unless one of the limited statutory exceptions applies. *Randall v. State*, 656 S.W.2d 487, 490 (Tex. Crim.App.1983).

Chapter Fourteen of the Code of Criminal Procedure provides the authority for most lawful warrantless arrests in Texas.[1] These provisions of the Code are founded in the law of necessity, that is, the necessity for prompt action in order to arrest or detain the offender so as to prevent his escape. *Honeycutt v. State*, 499 S.W.2d 662, 664 n. 2 (Tex.Cr.App.1973).

For instance, an arrest may be made with probable cause when the authorities, be they peace officers or magistrates, have a reasonable belief that an offense is being committed in their presence. Tex.Code Crim. Proc. arts. 14.01, 14.02. Article 14.04 applies when officers receive information from a credible person that a felony has been committed and that the offender is about to escape so that there is no time to procure a warrant. Tex.Code Crim. Proc. art. 14.04.

Article 14.03 includes a number of exceptions. Tex.Code Crim. Proc. art. 14.03. Several of these permit, and sometimes require, officers to arrest without a warrant persons who have assaulted household members or violated the terms of a protective order. *Id.* art. 14.03(a)(2)-(4), (b). Other provisions deal with the authority of peace officers to arrest without a warrant outside their territorial jurisdiction. *Id.* art. 14.03(d), (g).

---

1. Various other provisions and statutes throughout the Code of Criminal Procedure and Civil Statutes authorize peace officers to make warrantless arrests in particular situations. *See e.g.,* Tex.Code Crim. Proc. arts. 8.04, 8.07, 18.16; Tex.Rev.Civ. Stat. art. 6701d, § 153.

Article 14.03(a)(1), which is the article at issue here, allows a lawful warrantless arrest when officers discover a person in a suspicious place and under circumstances which reasonably show an offense has been or is about to be committed. Tex.Code Crim. Proc. art. 14.03(a)(1).

The predecessor of Article 14.03 originated in the Penal Code of 1856, and the language of the Article remains largely unchanged.[2] However, Texas legislative history is sparse with respect to the legislature's intent in passing this Article, and there is no definition of "suspicious places" given. Therefore, this Court is left to interpret Article 14.03(a)(1).

In *Lara v. State*, this Court handed down the test to be applied to an Article 14.03(a)(1) analysis. 469 S.W.2d 177, 179 (Tex.Crim.App.1971). In that case, the defendant was convicted of possession of a controlled substance and sentenced to life in prison. *Id.* at 178. At trial, the officers testified that they observed the defendant running from a known drug house. *Ibid.* They further testified that they apprehended the defendant and performed an initial search, and upon apprehending the remaining individuals, they read the defendant his rights. *Ibid.* They then performed a second search of the defendant and found a capsule of heroin. *Ibid.* On appeal, this Court affirmed the conviction, holding that there was no reversible error where, under all the circumstances observed by the officers and the facts known by them, they had probable cause and the defendant's arrest was authorized under the Code of Criminal Procedure Article 14.03(a)(1). *Id.* at 179. This test has been repeated on many occasions by this Court and others.

In this case, the appellant was taken to the hospital before the police arrived at the scene of the accident. When Trooper Thompson arrived at the scene, he observed a single car accident where the appellant's vehicle had left the road and landed upside down. At the hospital, the trooper noticed that the appellant had slurred speech, red glassy eyes, a strong smell of alcohol and that many of the appellant's answers were unintelligible. Further, the appellant admitted to the trooper that he had been drinking and driving that night.

The Court of Appeals used the above factors in a totality of the circumstances test in deciding the legality of the appellant's warrantless arrest. The Court of Appeals held that Trooper Thompson reasonably inferred from those facts the alcohol was likely a factor in the accident. *Dyar v. State*, 59 S.W.3d 713, 716 (Tex. App.-Austin 2001). We agree.

The appellant, however, focuses on the hospital where the arrest occurred. He argues that a hospital is not a "suspicious place." The appellant asserts that under *Johnson*, a "suspicious place" is where the criminal activity occurred.

In *Johnson*, this Court held that, since the appellant's arrest at the felony crime scene within two hours of the offense was based upon probable cause, the arrest was authorized under Article 14.03(a)(1) of the Texas Code of Criminal Procedure. *Johnson v. State*, 722 S.W.2d 417, 421 (Tex. Crim.App.1986). The fact that the appellant was at the scene of the crime two hours after the murder, was a factor in finding that the appellant was found in a suspicious place and was also a factor in determining probable cause. *Ibid.*

In *Johnson*, this Court stated, "Initially, we note that few, if any places are suspi-

**2.** Act of Jan. 1, 1966, 59th Leg., R.S., ch. 722, 1965 Tex. Gen. Laws 317, 362 (amended 1999) (current version at Tex.Code Crim. Proc. art. 14.03(a)(1)).

cious in and of themselves. Rather, additional facts available to an officer plus reasonable inferences from those facts in relation to a particular place may arouse justifiable suspicion." *Ibid.*

In light of this, several examples of "suspicious places" are in order. In *Hamel v. State,* the appellant had been under surveillance for suspicion of burglary and narcotics trafficking. 582 S.W.2d 424, 426 (Tex.Crim.App. [Panel Op.] 1979). The appellant was arrested for shoplifting after his car was stopped due to suspicion of shoplifting and contraband was found in plain view. *Ibid.* This Court held that the defendant's car was a "suspicious place" under the facts because the appellant had previous convictions for selling heroin, for burglary, and was further known by the arresting officers as the subject of numerous burglary investigations. *Ibid.* The appellant's behavior as the "wheel man" in front of the store was suspicious, as was the hurried, nervous and watchful behavior of the appellant and his companions, all of whom went into the store empty handed, but emerged carrying objects in their hands. *Ibid.* Thus, this Court held that the arrest of the defendant was authorized under 14.03(a)(1). *Id.* at 426–27.

In the case of *Douglas v. State,* the appellant was arrested for murder after officers responded to calls of shots being fired and being advised by the caller of the appellant's location. 679 S.W.2d 790, 790 (Tex.App.-Fort Worth 1984, no pet.). The court held that the defendant's house was a suspicious place since (1) there was a dead body lying in the front yard, (2) the police were informed that the defendant was "in there [the house]," (3) defendant had been seen near the body and had put something in a car parked outside the house and (4) defendant had run back into the house upon being seen by a witness. *Id.* at 790–91. These circumstances were

sufficient for the court to hold that the defendant, arrested inside his own home, was "in a suspicious place." *Ibid.*

In *Thomas v. State,* the appellant was arrested for burglary of a habitation with intent to commit theft. 681 S.W.2d 672, 673 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd). The court, while noting that "there is nothing inherently suspicious about members of a neighborhood walking down the street carrying something in broad daylight," held that since (1) one of the men was carrying a television set, (2) the men deposited some property in an abandoned house and (3) the arresting officer knew that at least one house in the neighborhood had been recently burglarized, the defendant was in a "suspicious place"—in this case, the street. *Id.* at 676.

Finally, in *Sheffield v. State,* the appellant was arrested for theft and possession of marijuana. 647 S.W.2d 413, 414 (Tex. App.-Austin), *pet. ref'd per curiam,* 650 S.W.2d 813 (Tex.Crim.App.1983). The police were alerted to the presence of a suspicious person thought to have been involved in a theft from a dormitory on the previous day. *Id.* at 415. Two officers saw the appellant enter a building and exit at a rapid pace with a wallet and some dollar bills in his hand. *Ibid.* The appellant tried to conceal the wallet from the officers and then told the officers that he had found it in the grass. *Ibid.* The court held that the defendant's actions prior to an investigatory stop combined with the police officers' knowledge of a recent theft in the area by a man matching defendant's description was sufficient to justify an arrest under 14.03(a)(1)—holding that the defendant's location had become a "suspicious place." *Ibid. See also Johnson v. State,* 722 S.W.2d 417, 419–20 (Tex.Crim. App.1986) (suspicions of police aroused by circumstances and actions of "maintenance man" who arrived to clean up mess from

stabbing); *Battles v. State*, 626 S.W.2d 149, 150 (Tex.App.-Fort Worth 1981, no pet.) (defendant in "suspicious place" when found in complainant's house with gun in hand after call for discharge of firearms— defendant in view of police and homeowner directed police to defendant).

There are also several cases in which the courts have found a location not to be a "suspicious place." In *Amores v. State*, the appellant was arrested for possession of cocaine. 816 S.W.2d 407, 410 (Tex. Crim.App.1991). On appeal, he claimed that the evidence was illegally seized through a warrantless arrest. *Ibid.* This Court held that the appellant's initial detention was an arrest, not an investigative stop because the officer blocked the appellant's car, drew his revolver at the appellant, ordered him from the car at gunpoint, ordered him to lie face down and told him he would be shot if he did not obey orders. *Ibid.*

The arresting officer testified that the facts known to him at the time of the arrest were the following: 1) the police received a telephone report of a burglary in progress involving a black male putting something in the trunk of a car; 2) the location of the reported burglary was at an apartment complex whose manager he knew to have called in numerous reports of criminal activity; 3) upon arriving at the scene within one minute of the report, he observed a black male sitting at the wheel of the car; 4) the car was backed into a parking space; 5) the black male was about to drive away as the officer drove into the lot; and 6) he knew that no "blacks" lived at these apartments at this time. *Id.* at 413–14. The officer further acknowledged that, at the time he arrived on the scene, no burglary was occurring from his viewpoint and that, until the point at which he found the weapon in the appellant's car, he did not observe any violation of the law. *Id.* at 414. This Court held that, where events are as consistent with innocent activity as with criminal activity, the arrest of a suspect based on those events is unlawful under Article 14.03(a)(1). *Ibid.*

In *Hoag v. State*, the officers placed the defendant under surveillance for the purpose of apprehending him in a burglary. 728 S.W.2d 375, 377 (Tex.Crim.App.1987). Subsequently, the officers removed the defendant from his car at gunpoint and gave him Miranda warnings. *Ibid.* After searching the defendant's car, they found stolen jewelry and arrested the defendant for burglary of a habitation. *Ibid.* The defendant claimed that the jewelry was illegally seized through a warrantless arrest. *Ibid.*

In that case, the arresting officers observed the appellant park his car and enter an apartment complex. *Id.* at 379. When the appellant emerged from the complex, he was carrying a newspaper and a soft drink. *Ibid.* The officers saw the appellant take something out of his pocket and put it on the floor of the car. *Ibid.* Suspecting that a burglary had taken place, the officers checked the complex for signs that an apartment had been burglarized and found none. *Ibid.*

This Court held that since the officers checked the apartment complex and failed to find any signs of burglary, there were no other circumstances which could have reasonably shown that the appellant had been guilty of burglary. *Id.* at 379–80. Therefore, the appellant was not in a suspicious place and the warrantless arrest can not be upheld under Article 14.03(a)(1). *Ibid. See also Lowery v. State*, 499 S.W.2d 160, 164 (Tex.Crim.App.1973) (court found that apartments were not a suspicious place because there was no evidence of how the officers knew appellant was at that location, nor was there evidence con-

cerning his circumstances there); *Holland v. State*, 788 S.W.2d 112, 115 (Tex.App.-Dallas 1990, pet ref'd) (appellant's apartment was not a suspicious place where the appellant was found in the back room of his own apartment and no weapon was found, there were no stolen items present and no contraband was in sight).

The appellant claims that in interpreting Article 14.03(a)(1), the courts have not given meaning to "suspicious places." That is a misconception.

In *Muniz v. State*, this Court interpreted Article 14.03(a)(1) as the functional equivalent of probable cause. 851 S.W.2d 238, 251 (Tex.Crim.App.) *cert. denied*, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993). That interpretation, as stated, is overly broad. Although probable cause that the defendant committed the crime is one part of the test, it is not the complete test. However, this Court did apply the correct analysis in that case. *See generally, id.* at 250–52.

In *Muniz*, the appellant was found hiding in his brother's closet. *Id.* at 251. A closet is not *per se* a suspicious place. *Ibid.* However, the facts showed that on the night the victim disappeared, the appellant had been seen near the scene of the murder following a woman who matched the victim's description, he was seen wearing dirty, wet clothes and showing wounds from a struggle, and he asked a witness to deny having seen him. *Ibid.* At this point, the appellant became a suspect in the murder. *Ibid.*

A highway patrolman went to the house of the appellant's brother. *Ibid.* The appellant's brother told the patrolman that he would turn over the appellant if he were in the house. *Ibid.* The appellant's wife, who was also at the house, nodded towards the bedroom and the appellant was found hiding in the closet. *Ibid.* This Court concluded that the appellant was arrested in a suspicious place. *Ibid.*

In its analysis, this Court first looked at all the facts and circumstances known to the police officer which would reasonably show that the defendant had committed a crime listed in Article 14.03(a)(1). *Ibid.* Next, this Court looked at all the facts and circumstances in relation to a particular place to show that the defendant was in a suspicious place. *Ibid.* In other words, this Court used the totality of circumstances test to find first, probable cause that the defendant committed the crime and second, to find that the defendant was in a suspicious place. *Ibid.* Many of the facts supported both conclusions. *Ibid.*

Then in *Johnson*, as discussed above, this Court held that, since the appellant's arrest at the felony crime scene within two hours of the offense was based upon probable cause, the arrest was authorized under Article 14.03(a)(1) of the Texas Code of Criminal Procedure. *Johnson v. State*, 722 S.W.2d 417, 421 (Tex.Crim.App.1986). Again, this holding does not state the complete test, but this Court applied the complete test.

In its analysis, this Court stated that the circumstances within the knowledge of a peace officer which reasonably show that a particular person is guilty of a crime is the functional equivalent of probable cause to believe that a particular person has committed a crime. *Ibid.* The appellant was arrested under circumstances which reasonably showed that he was guilty of the felony offense of murder. *Ibid.* The question then became what is a suspicious place for the purposes of Article 14.03. *Ibid.*

This Court found that the appellant was present at the crime scene within two hours of the murder, the appellant appeared nervous, he had blood on his pants and he admitted that the keys found at the

murder scene belonged to him.[3] *Id.* at 419–20. The presence of the appellant was not contrived by law enforcement officials to circumvent the procurement of a warrant. *Id.* at 421. Therefore, this Court held that the appellant's arrest was authorized under Article 14.03(a)(1). *Ibid.*

In this case, Trooper Thompson arrived at the scene of the accident and was informed that the driver was taken to the hospital. This information would tend to make a hospital a suspicious place in which to seek the driver who was suspected of causing the accident.

At the hospital, soon after the accident, the trooper observed that the appellant had slurred speech, red glassy eyes, a strong smell of alcohol and that many of the appellant's answers were unintelligible. The appellant also admitted to drinking and driving.

Those facts in relation to the hospital make the hospital a "suspicious place." Those same facts also provided probable cause to believe that the appellant had been drinking and driving.

■ The determination of whether a place is a "suspicious place" is a highly fact-specific analysis. *Holland v. State,* 788 S.W.2d 112, 113 (Tex.App.-Dallas 1990, pet. ref'd). Review of the case law indicates that several different factors have been used to justify the determination of a place as suspicious. However, only one factor seems to be constant throughout the case law. The time frame between the crime and the apprehension of a suspect in a suspicious place is short. We are not setting any specific time limits today, but we are pointing out that the time between the crime and the apprehension of the suspect in a suspicious place is an important factor.

**CONCLUSION**

Reviewing courts in Texas have consistently used the totality of the circumstances test for deciding whether an arrest is proper under Article 14.03(a)(1). When the Legislature meets, after a particular statute or article has been judicially construed, without changing that statute or article, we presume the Legislature intended the same construction should continue to be applied. *Marin v. State,* 891 S.W.2d 267, 271–272 (Tex.Crim.App.1994). The Texas Legislature has not chosen to amend this Article after that interpretation by this Court. Therefore, we reaffirm today that the test under Article 14.03(a)(1) is a totality of the circumstances test. First, probable cause that the defendant committed a crime must be found and second, the defendant must be found in a "suspicious place." The judgment of the Third Court of Appeals is affirmed.

COCHRAN, J., filed a concurring opinion, in which MEYERS and JOHNSON, JJ., joined.

KELLER, P.J., and KEASLER and HERVEY, JJ., concurred.

COCHRAN, J.

COCHRAN, J., concurring in which MEYERS and JOHNSON, JJ., joined.

I join the majority opinion. I add these comments in the fond hope that the Texas Legislature will one day revise article 14.03(a)(1)[1] to clarify the meaning of its

---

**3.** These facts were also used to find probable cause that the appellant committed the murder.

**1.** Tex.Code Crim. Proc. art. 14.03(a)(1), reads:

(a) Any peace officer may arrest, without warrant:

(1) persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of

provision that a peace officer may arrest, without warrant, certain "persons found in suspicious places." Professors Dix and Dawson call this article "[t]he most troublesome of the statutory provisions authorizing warrantless arrests,"[2] and for good reason. It makes little sense. "The legislative rationale for exempting arrests made in 'suspicious places' from the warrant requirement is uncertain," but, Professors Dix and Dawson continue, this uncertainty "has never troubled the Texas courts."[3] Well, the phrase itself has troubled Texas courts and has engendered both convoluted constructions of the English language and impressive judicial gymnastics, as our courts have attempted to discern whatever it is that the Legislature might have meant by that phrase. Regardless of whether our interpretations accord with the Legislature's original or current intent, the phrase, "persons found in suspicious places," misleads the bench and bar.

The original purpose of that phrase is lost in the mists of early Texas history. It first appeared in a pre-Civil War statute which allowed city officials to establish local rules authorizing

> some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code, or threaten, or are about to commit some offense against the laws[.]

**2.** GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 9.61 at 555 (2d ed.2001).

**3.** *Id.* at 556; *see also id.* § 9.63 at 557 (stating, with remarkable understatement, that the substance of the "suspicious places" requirement is "remarkably obscure").

**4.** TEX.CODE CRIM. PROC. art. 211 (1856).

**5.** *See Haller v. State,* 72 Tex.Crim. 294, 295–96, 162 S.W. 872, 873 (1913) (upholding warrantless arrest of prostitute who "had been or was about to ply her vocation" under "suspicious places" statute).

the arrest without warrant, of persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws.[4]

Without that statewide authorization statute, local peace officers could not make warrantless arrests except in very limited circumstances. With ordinances passed under the authority of this statute, however, local officers could not only make warrantless arrests for felonies and breaches of the peace, but could also arrest those who were found in "suspicious places" who *might* soon commit such crimes. Thus, drunks in the bar were subject to warrantless arrest even though they had not yet breached the peace, prostitutes could be arrested as they plied their trade,[5] and those who acted like they were about to burglarize a store or home could be arrested before any crime occurred.[6] This was, quite frankly, a "suspicious persons" statute authorizing arrests under circumstances which would not pass constitutional muster today.[7] The provision permitted

**6.** *See Woods v. State,* 119 Tex.Crim. 43, 44–47, 46 S.W.2d 704, 704–05 (1932) (police officer was not justified in warrantless arrest and search of two men found in alleyway behind church because city had not formally enacted "suspicious places" ordinance pursuant to statewide statute; mayor testified that he "told [the marshal] to pick up suspicious characters without a warrant whether they were violating the law or not. In other words, it would be dangerous for a stranger to come there [Whitesboro] if he would hang around suspicious places"; suggesting that arrest of would-be burglars would have been lawful had ordinance been enacted).

**7.** *See* DIX & DAWSON, *supra* § 9.61 at 556 (stating that this statute "most likely was viewed as delegating to local authorities the power to provide by ordinance for law enforcement officers to preventively intervene when they encountered suspicious persons").

law enforcement to intervene, and arrest, escort out of town, or generally hassle those who were not welcome in Pleasantville,[8] as long as the offense committed or contemplated was a felony or breach of the peace.[9] These local ordinances legitimized investigatory detentions and arrests that would today be considered constitutionally offensive.[10]

Nonetheless, the statute has survived virtually unchanged for almost a century and a half, despite other enormous changes in constitutional and statutory search and seizure law. What is one to make of this provision today? We have stated that article 14.03(a)(1) "should be applied to authorize warrantless arrests in only limited situations[,]"[11] but our cases

are less than crystal clear about precisely what those limited situations are.

I agree with the majority in its implicit holding that "places" are not inherently suspicious; rather it is people and circumstances taken together that are sometimes suspicious. Just as the Fourth Amendment does not protect places, it protects people,[12] any "place" may become suspicious when a person at that location and the accompanying circumstances raise a reasonable belief that the person has committed (or is about to commit) a crime and there is no time to obtain a warrant. If we wish to uphold the original intent of the pre-Civil War statute, but in accord with current constitutional considerations, we might do well to explain our prior holdings under the organizational principle of exigent circumstances.[13]

---

**8.** *See, e.g., Minter v. State,* 70 Tex.Crim. 634, 641, 159 S.W. 286, 291–92 (1913) (stating that it is "the duty of every peace officer to preserve the peace within his jurisdiction[;]" thus, relying on "suspicious places" statute, "he shall use all lawful means ... [to] interfere, without warrant, to prevent or suppress crime").

**9.** *See, e.g., San Antonio & Aransas Ry. Co. v. Griffin,* 20 Tex.Civ.App. 91, 97, 48 S.W. 542, 545 (1898, writ ref'd) (illegal arrest under authorizing statute because false imprisonment plaintiff had not been shown guilty of some felony nor had he threatened to commit some such offense; he was arrested for having stolen one dollar's worth of coal from his employer, which, even in 1895, was not a felony); *Gold v. Campbell,* 54 Tex.Civ.App. 269, 276, 117 S.W. 463, 467–68 (1909, no writ) (illegal arrest, under authorizing statute, of false imprisonment plaintiff, a storekeeper who had sold handkerchiefs for more than buyer wanted to pay after their quality was discovered, because there was no evidence that plaintiff was "found in suspicious places, or 'under suspicious circumstances,' but at his own store in pursuit of his legitimate business").

**10.** *See* DIX & DAWSON, *supra,* § 9.61 at 556 ("the statute seems originally to have been designed to legitimize what today are investigatory stops under ordinances that today

would certainly be regarded as constitutionally offensive"); *see also* Gerald S. Reamey, *Arrests in Texas's "Suspicious Places": A Rule in Search of Reason,* 31 TEX. TECH L.REV. 931, 980 (2000) (noting that an "obvious difficulty" with the wording of article 14.03(a)(1) "is that the legislative intent behind passage of the 1856 statute has become obscured by time and, more importantly, by a significantly changed way of viewing constitutional constraints").

**11.** *Johnson v. State,* 722 S.W.2d 417, 421 (Tex.Crim.App.1986).

**12.** *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ("the Fourth Amendment protects people, not places").

**13.** *See* Reamey, *supra* at 976. Professor Reamey, attempting to make some sense out of the "suspicious places" language, states:

Necessity is the guiding principle in interpreting warrant exceptions. Therefore, not every crime scene qualifies as a suspicious place excusing a warrant. The correct question in crime scene cases is not whether an offense was committed at the place where the suspect is found, but whether some reason exists not to obtain prior judicial approval for the arrest. A certain level of exigency usually accompanies the bring-

Thus, when police have probable cause to believe that person "X" has committed a felony or breach of the peace and he is found in "Y" location under "suspicious circumstances" and there is no time to obtain a warrant because: 1) the person will not otherwise remain at "Y" location; 2) the evidence of the crime will otherwise disappear; or 3) the person poses a continuing present threat to others, then police may arrest "X" without a warrant.[14] On the other hand, if there are no exigent circumstances that call for immediate action or detention by the police, article 14.03(a)(1) cannot be used to justify a warrantless arrest.

Until and unless the Legislature provides more precise language in article 14.03, I believe that this construction best adheres to the legitimate historical purpose and scope of the statute. This interpretation also complies with Fourth Amendment jurisprudence. Finally, federal cases applying the "exigent circumstances" doctrine provide an appropriate analytical framework for future fact scenarios under the statute.

With these comments, I join the majority.

ing together of a suspect, criminal evidence (which may be evanescent), and probable cause in the place where the offense occurred.

*Id.* at 976–77 (footnotes omitted).

Some examples of earlier Texas cases which relied upon what is now article 14.03(a)(1) for arrests under what is now called the "exigent circumstances" doctrine include: *Saldana v. State,* 383 S.W.2d 599, 600–01 (Tex.Crim.App.1964) (when officer, who had two cabins under surveillance for drug activities, saw taxicab come into cabin courts at 3:00 a.m., and saw defendant in front seat, heard crinkling noises, and saw something being stuffed under front seat, there was sufficient probable cause for immediate arrest without warrant); *Baray v. State,* 167 Tex.Crim. 456, 457–58, 321 S.W.2d 87, 88–89 (1958) (upholding legality of warrantless arrest under "suspicious places" ordinance when officers saw defendant drive up in car belonging to known narcotics dealer and observed him, upon officers' approach, look back and hurriedly drive away, throwing cigarettes from car window); *Ringo v. State,* 161 Tex.Crim. 93, 94, 275 S.W.2d 121, 122–23 (1955) (when officers stopped car because of suspicious circumstances and one officer radioed for car registration while other officer talked to defendant and discovered that he had no identification, had been unemployed since arriving in state, and car was not registered in defendant's name, "suspicious places" statute authorized defendant's war-

rantless arrest for "vagrancy and an investigation for automobile theft"); *Mason v. State,* 160 Tex.Crim. 501, 503–04, 272 S.W.2d 527, 528–29 (1954) (warrantless arrest under "suspicious places" statute upheld where officers saw two white men in early morning in Negro neighborhood carrying cardboard boxes, and, when officers stopped men and found that boxes contained about 60 packages of cigarettes, a radio, and book matches with address of barbecue stand on them, officers then took the men to the barbecue stand and found that it had been burglarized); *McCutcheon v. State,* 158 Tex.Crim. 419, 420–21, 252 S.W.2d 175, 175–76 (1952) (warrantless arrests under "suspicious places" ordinance upheld when officers saw defendants near laundry throwing objects over hedge, and, when police inquired, defendants denied having thrown anything but officer found two shirts behind hedge); *compare Butler v. State,* 151 Tex. Crim. 244, 245–46, 208 S.W.2d 89, 89–90 (1947) (warrantless arrest not authorized under "suspicious places" ordinance when store was burglarized on Thursday night, police matched defendant's license number and then arrested him without warrant at his home on Saturday).

**14.** *See* DIX & DAWSON, *supra,* § 9.64 at 562 (reading *Johnson v. State* "to permit warrantless arrests in situations where—generally speaking—circumstances do not permit the leisure of a judicial prearrest evaluation of evidence sufficiency").