Opinion issued August 13, 2009








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00424-CR

____________


ALBERTO CONTRERAS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 179th District Court

Harris County, Texas

Trial Court Cause No. 1109955






MEMORANDUM OPINION

 A jury found appellant, Alberto Contreras, guilty of the offense of aggravated
robbery (1) and assessed his punishment at confinement for thirty-five years and one
day. In his sole point of error, appellant contends that the trial court erred in denying
his motion to suppress his videotaped statement.

 We affirm.

Factual Background

 Mario Calzada testified that on the evening of March 26, 2007, at the Quail
Meadows Apartment complex, he heard two gunshots fired. He went to the window
of his apartment, where he saw two people struggling on the ground and "another one
a little distance away." Noticing that one of the individuals "had something in his
hand, [and was] trying to hit the person who was underneath him," Calzada left his
window and called for emergency assistance. When police officers arrived, Calzada
went to his neighbor's apartment where he saw Julio Jimenez, the complainant, "lying
on the floor" with "half of his body inside the apartment and the other half outside." 
The complainant told Calzada that two men "had tried to rob him and that they had
shot him." 

 Houston Police Department ("HPD") Officer S. O'Leary testified that he was
dispatched to the apartment complex where he saw the complainant "sitting inside the
doorway of an apartment." The complainant told O'Leary that two men wearing ski
masks had attempted to rob him, but that "he attempted to fight with them and he got
shot." O'Leary noticed that the complainant had "been shot several times in the torso
area." The complainant told O'Leary that after the men shot him, he "was able to take
the gun away from the [men] and actually hit one of them with the gun." When
O'Leary asked the complainant what had happened to the firearm, the complainant's
wife picked it up and handed it to O'Leary. Moments later an ambulance arrived and
transported the complainant to a nearby hospital where he died.

 Reynaldo Canales, a maintenance worker at the apartment complex, testified
that hours after the shooting, he saw two young men, appellant and Joshua Nogess,
park their car, get out, and start looking for something "underneath the cars and
between the bushes" in the area where the complainant had been shot the night
before. Canales did not recognize the two men and suspected that they had robbed
the complainant and were now looking for the firearm that they had lost during the
struggle. Canales called Dora Lucio, the apartment complex manager, who came
outside and joined Canales. When appellant and Nogess noticed that Canales and
Lucio were watching them, they left the apartment complex on foot. While Lucio
called for emergency assistance, Canales followed the two men in his car down a
street to a nearby elementary school where appellant and Nogess left the road and
walked into a wooded area.

 HPD Officer T. Stearns testified that he heard HPD Officer M. Vana "asking
for help over the radio." Vana said that "she had two possible murder suspects in the
area and was trying to find them." When Stearns arrived in the area near the
apartment complex, Vana gave Stearns a description of the suspects' clothing and
told him that the suspects were "two Hispanic males" who had last been seen close
to a nearby elementary school. Stearns joined Vana and other police officers in
searching for appellant and Nogess.

 As he was driving east on a street near the elementary school, Stearns saw
appellant and Nogess "walking south . . . [in] an open grassy area." Stearns left his
patrol car and followed them on foot without being seen. While following them,
Stearns "directed the other officers to come down Hall Road . . . to try to box them
in." Appellant and Nogess kept walking south, but when they approached Hall Road,
they saw the "patrol cars coming down the road at a high rate of speed." Appellant
and Nogess turned around and started walking back towards Stearns, who pulled out
his firearm and told them, "Freeze, turn around, . . . and get on the ground." 

 HPD Officer K. Carr testified that he transported appellant to the homicide
division at HPD headquarters where appellant waived his legal rights and gave a
videotaped statement in which he confessed to his participation in the robbery of the
complainant.

Motion to Suppress

 In one point of error, appellant argues that the trial court erred in denying his
motion to suppress his videotaped statement because "any statement was the fruit of
an arrest of [appellant] made without warrant and without probable cause." 

 Our standard for reviewing a trial court's ruling on a motion to suppress
evidence is bifurcated; we give almost total deference to a trial court's determination
of historical facts and review de novo the trial court's application of the law. Neal
v. State, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When the trial court does not
make findings of fact, we view the evidence in the light most favorable to the trial
court's ruling. Id. We must sustain the trial court's ruling if it is reasonably
supported by the record and is correct under any theory of law applicable to the case. 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Flores v. State, 177
S.W.3d 8, 14 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd).

 In Texas, police officers are authorized to pursue and make warrantless arrests
of "persons found in suspicious places and under circumstances which reasonably
show that such persons have been guilty of some felony . . . ." Tex. Code Crim.
Proc. Ann. art. 14.03(a)(1) (Vernon Supp. 2008) (emphasis added). In making a
warrantless arrest under article 14.03(a)(1), police officers must still have probable
cause to make the arrest. Dyar v. State, 125 S.W.3d 460, 467 (Tex. Crim. App.
2003). By looking at the "totality of the circumstances," we determine first whether
probable cause existed that the defendant committed a felony and next whether the
defendant was in a "suspicious place." Id. 

 Probable cause exists if a police officer "knows of facts that would lead a
reasonable person to believe that the suspect has committed or will soon commit a
crime." Neal, 256 S.W.3d at 280; see Torres v. State, 868 S.W.2d 798, 801 (Tex.
Crim. App. 1993). "Police broadcasts that are based on probable cause and that
report a felony and a description of the perpetrator satisfy the requirements for a
warrantless arrest." Goldberg v. State, 95 S.W.3d 345, 362 (Tex. App.--Houston [1st
Dist.] 2002, pet. ref'd) (citing Law v. State, 574 S.W.2d 82, 84 (Tex. Crim. App.
1978)).

 Here, Officer Vana radioed Officer Stearns and other police officers, telling
them that two murder suspects had been seen at the apartment complex and giving
them a description of appellant and Nogess. Vana based the information that she
conveyed on the information she received from Lucio and Canales. Lucio had
informed Vana that appellant and Nogess, within hours of the shooting, had been
searching for something in the bushes and under cars in the area where the
complainant had been robbed and shot. Because the two men who had robbed the
complainant had lost their firearm during the robbery, appellant's actions seemed
highly suspicious. Lucio also told Vana that when appellant and Nogess saw that
Canales and Lucio had noticed what they were doing, they left the apartment complex
on foot, instead of driving away in their car. Based on Lucio's observations, Officer
Vana gave to other police officers a description of appellant and Nogess to other
police officers, including Stearns, and gave their last known location. Officer Stearns
explained that while he was following appellant and Nogess, he saw them turn away
from the road when they "saw the patrol cars coming." Based on the totality of the
circumstances, we conclude that these facts would lead a reasonable person to believe
that appellant had robbed the complainant. See Neal, 256 S.W.3d at 280.

 To justify a warrantless arrest under article 14.03(a)(1), the State must prove
not only the existence of probable cause that the defendant committed a felony, but
also that the defendant was found in a "suspicious place." Tex. Code Crim. Proc.
Ann. art. 14.03(a)(1). "The determination of whether a place is a 'suspicious place'
is a highly fact-specific analysis." Dyar, 125 S.W.3d at 468. Nevertheless, a place
where a crime has recently occurred is a "suspicious place." See id.; Goldberg, 95
S.W.3d at 363.

 Here, police officers were notified that appellant had been found at a place
where a man had been robbed and shot the night before. See Dyar, 125 S.W.3d at
468 (noting that "the time between the crime and the apprehension of the suspect in
a suspicious place is an important factor"). When appellant, who is not a resident of
the apartment complex, was found at the scene of the crime, he was searching for
something under bushes and cars. This is significant because the two men who had
robbed and shot the complainant had lost their firearm in the course of the robbery. 
Based on the totality of the circumstances, we conclude that appellant was found in
a "suspicious place." See Tex. Code Crim. Proc. Ann. art. 14.03(a)(1); Dyar, 125
S.W.3d at 468; Goldberg, 95 S.W.3d at 363.

 Accordingly, we hold that the trial court did not err in denying appellant's
motion to suppress his videotaped statement.

 We overrule appellant's sole issue.

Conclusion

 We affirm the judgment of the trial court. 

 





 Terry Jennings

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.


Justice Keyes, concurring.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Penal Code Ann. § 29.03 (Vernon 2003).