

# In the Court of Criminal Appeals of Texas

---

No. PD-0409-22

---

JOSHUA RAY ARMSTRONG, *Appellant*

v.

THE STATE OF TEXAS

---

On State's Petition for Discretionary Review
From the Fifth Court of Appeals
Grayson County

---

YEARY, J., filed a concurring opinion in which SCHENCK, P.J., and FINLEY, J., joined.

I concur in the Court's judgment, but I do not join its opinion. I whole-heartedly agree with the Court that the part of Article 14.03(a)(1) that is pertinent in this case contains no language whatsoever that either plainly or implicitly imposes an "exigent circumstances" requirement as part of the conditional authority it provides for peace

officers to make warrantless arrests. TEX. CODE CRIM. PROC. art. 14.03(a)(1).[1] The Court rightly rejects any impulse to engraft such a requirement onto the statute in an attempt to imbue its "remarkably obscure" text with some discernable (and constitutional) functionality.[2] After all, when the Legislature wants to require exigent circumstances, it has demonstrated it knows how to do so. *See* Majority Opinion at 7−8; *State v. McGuire*, 689 S.W.3d 596, 608 (Tex. Crim. App. 2024) (Keel, J., concurring) (pointing out various provisions in Chapter 14 that do explicitly contain exigency requirements).

Moreover, I applaud the Court for attempting to construe that most "troublesome" of phrases, "suspicious place." *See* Majority Opinion

---

[1] Since 1967, the statute has read essentially as it does today: "Any peace officer may arrest, without warrant . . . persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony . . ., breach of the peace, or . . . threaten or are about to commit some offense against the laws[.]" Acts 1967, 60th Leg., ch. 659, § 9, p. 1735, eff. Aug. 28, 1967. I concede that the last clause of this provision—"threaten or . . . about to commit some offense"—may well embrace a kind of exigency requirement. My remarks today, however, relate to the balance of the statute.

[2] *See* George E. Dix & John M. Schmolesky, 40 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 12:25 (3d ed. 2011), at 776 (describing the "substance" of Article 14.03(a)(1)'s "suspicious place" requirement as "remarkably obscure"). In her concurring opinion in *Dyar v. State*, former Judge Cochran also decried the fact that "our cases are less than crystal clear about precisely what" limitations Article 14.03(a)(1) imposes on the ability of peace officers to conduct warrantless arrests. 125 S.W.3d 460, 470 (Tex. Crim. App. 2003) (Cochran, J., concurring). It was in her concurring opinion in *Dyar* that the notion of reading an exigent circumstances requirement into the statute in order to give it constitutionally viable substantive content first took hold. *Id.* at 470−71. While I agree that both the statute and our cases construing it have been "less than crystal clear," I disagree that the way to resolve the obscurity is to impose an exigent circumstances requirement that is unsupported by the statute's text.

at 1−2 (quoting George E. Dix & Robert O. Dawson, 40 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 9.61 (2d ed. 2001), at 555); *id*. at 8−11 (consulting dictionary definitions for "suspicious" and "place," and then falling back on prior cases to identify relevant "factors"). Unfortunately, I do not believe the Court's present-day effort is any more enlightening, ultimately, than its past attempts.[3] And the Court could do better.

The Court today repeats earlier pronouncements that in deciding the applicability of Article 14.03(a)(1) to authorize warrantless arrests, courts should consider "the totality of the circumstances," and that it is a "highly fact specific analysis" that should take into account certain "different factors" (which apparently *may*, but does not *have to*, include exigent circumstances)—the relevance of which *still* goes utterly unexplained. Majority Opinion at 9−11. None of this serves to provide the missing "substance" that the legal commentators (as well as former Judge Cochran, in her concurring opinion in *Dyar v. State*, 125 S.W.3d 460, 468−71 (Tex. Crim. App. 2003) (Cochran, J., concurring)) have

---

[3] Along the way, the Court makes various allusions to what it perceives the Legislature *intended*. *E.g.*, Majority Opinion at 7 ("The absence of an exigency requirement seems intentional."). I could have joined at least Part IIIa of the Court's opinion had it not incorporated such a notion. As I have said on other occasions, I do not think our task in construing statutes is to discern and effectuate *legislative intent*, but it is instead to discern and effectuate the reasonable import of the statutory language itself, which is the law. *See e.g.*, *Ex parte Kibler*, 664 S.W.3d 220, 233−34 (Tex. Crim. App. 2022) (Yeary, J., concurring) ("I do not agree that statutory interpretation should be a matter of judges discerning amorphous legislative intent.").

found so lacking.[4]

On remand, the court of appeals will now know what *not* to require in order to justify an arrest under Article 14.03(a)(1): exigent circumstances. And perhaps that is all that needs to be said in the present case, in the posture that it comes before us. But nothing in the Court's opinion tells the court of appeals on remand the *substance* of what *is* required to be found before it may conclude that a person has been "found in a suspicious place" under the statute.

At some point the Court must do a better job supplying that substance. All else strikes me as nothing more than continued

---

[4] Indeed, that is precisely what we granted discretionary review in *Dyar* to do: give some substantive content to Article 14.03(a)(1)'s "found in a suspicious place" requirement. *See* 125 S.W.3d at 451 ("The issue on this appeal is whether the appellant's warrantless arrest was made while the appellant was in a 'suspicious place' and therefore, authorized under Article 14.03(a)(1) of the Texas Code of Criminal Procedure."). The best the Court could do, then as now, in providing that substance, however, was to declare it to be highly fact-bound, subject to a "totality of the circumstances" review, involving "several different" (if amorphous and unexplained) "factors," the most "constant" recognized in the cases being when "[t]he time frame between the crime and the apprehension of a suspect in a suspicious place is short." *Id*. at 468. Of course, this most "constant[ly]" recognized temporal "factor" simply begs the question of what constitutes a "suspicious place" to begin with.

Another constant in construing the statute, the Court has said, is the recognition that "few, if any places are suspicious in and of themselves." *Id*. at 464−65 (quoting *Johnson v. State*, 722 S.W.2d 417, 421 (Tex. Crim. App. 1986)). So, what does make a "place" "suspicious" for purposes of the statute? The dictionary definitions the Court offers today provide little guidance. Majority Opinion at 8−9. Most cannot even possibly apply. For example, "disposed to suspect: distrustful" cannot possibly be attributed to a place; a place cannot be "distrustful." Nor can a place be "expressing or indicative of suspicion." A place cannot be in "a state of mental uneasiness and uncertainty" or "doubt[.]" A "physical environment" simply cannot display such cognitive qualities. These definitions accomplish little to dispel the "obscurity" that Professors Dix and Schmolesky perceived in the statute.

jurisprudential wheel-spinning. And the jurisprudential gap remains.

It seems to me that perhaps the best way to make sense of Article 14.03(a)(1) might be to construe it to authorize a peace officer to make a warrantless arrest whenever he has "found" a person in *a place* that *is suspicious* because something about the location where the person is found establishes, or enhances, probable cause to believe—under the totality of circumstances—that the person:

(1)     has committed an offense described by article 14.03(a)(1); or is

(2)     threatening or preparing "to commit some offense against the laws";

(3)     committing "some felony" or "breach of the peace" (or another of the offenses enumerated in the statute);

(4)     escaping after having committed "some felony" or "breach of the peace," etc.; or

(5)     attempting to elude detection after having committed "some felony" or "breach of the peace," etc.

Such a reading of the statute admittedly focuses less on the literal "place" at which the suspect is "found" as a source of "suspicious"-ness and more on the circumstances of the peace officer's discovery of the suspect which give rise to probable cause to believe he has committed an offense, or is preparing, committing, escaping from, or attempting to elude detection for the commission of a suspected offense.

If that seems somewhat broad, it should be remembered, just as the Court acknowledges today, that neither the Fourth Amendment to the United States Constitution nor Article I, § 9, of the Texas

Constitution requires a warrant at all before police may arrest a person for whom they have probable cause to believe he has committed an offense—at least in a public place. *See* Majority Opinion at 6 ("Neither the U.S. Constitution nor the Texas Constitution requires a warrant for making arrests in public."). *See also* U.S. CONST. amend. 4; TEX. CONST. art. 1, § 9; *United States v. Watson*, 423 U.S. 411, 423−24 (1976); *Hulit v. State*, 982 S.W.2d 431, 435 (Tex. Crim. App. 1998). So, to construe the statute at issue with such breadth, so long as it does not do violence to the statutory language itself, at least does not violate a constitutional requirement. And if such a construction provides some otherwise lacking context to the circumstances in which the statute might be appropriately applied, it will benefit the jurisprudence of the state in ways that the Court's opinion still fails to accomplish.

With these comments, I concur in the Court's judgment.

**FILED:**                                    May 28, 2025
**PUBLISH**