# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-03-00528-CR

---

**Alicia Phillips, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
NO. 3012223, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Alicia Phillips appeals her conviction for possession of cocaine in an amount of one gram or more but less than four grams. *See* Tex. Health & Safety Code Ann. § 481.115(c) (West 2003). Appellant waived trial by jury and entered a plea of guilty to the indictment after the trial court had overruled her pretrial motion to suppress evidence. The trial court found the evidence substantiated appellant's guilt but deferred adjudication of guilt and placed appellant on community supervision for four years subject to certain conditions.

**Point of Error**

Appellant advances a single point of error:

[T]he trial court erred in denying appellant's motion to suppress because the probable cause for the issuance of the warrant was based on an illegal warrantless search of appellant's apartment.

Appellant points out that the trial court certified her right of appeal, s*ee* Tex. R. App. P. 25.2, and observes that a defendant may directly appeal an imposition of deferred adjudication community supervision when that ruling is first made. *See Manuel v. State*, 994 S.W.2d 658 (Tex. Crim. App. 1999); *Dillehey v. State*, 815 S.W.2d 623, 625 (Tex. Crim. App. 1991).

**Motion to Suppress**

In light of the only point of error, we turn to the motion to suppress evidence which appellant claims was improperly denied. The motion alleged, *inter alia*, that the evidence seized should be suppressed because "(1) [t]he search of Defendant's home although made with a warrant was based on a previous illegal warrantless search of Defendant's home" and "(3) [t]he search and seizure were made without probable cause."

**Suppression Hearing**

At the suppression hearing, the State produced the search warrant and affidavit and documents showing execution of the warrant and the attached inventory. Despite this, the State

2

continued with the burden of producing evidence.[1] Appellant was able to cross-examine each of the State's witnesses and later testified herself.

On April 27, 2001, Austin Police Officers Kelly Davenport and Jeff Gabler were dressed in mufti and working undercover in a "buy-bust" and street level operation in Thurmond Heights in North Austin, an area with a high level of drug activity. They were in an unmarked police car. Gabler was driving and Davenport was in the front passenger seat. There were uniformed police officers in the general area as "close cover" or "backup" support for the two undercover officers or as a "take down" unit.

_____

[1] When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation, this Court has placed the burden of proof initially upon the defendant. As the movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State. A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant.

Once a defendant has established 1) that a search or seizure occurred and 2) that no warrant was obtained, the burden of proof shifts to the State. If the State produces evidence of a warrant, the burden of proof is shifted back to the defendant to show the invalidity of the warrant. If the State is unable to produce evidence of a warrant, then it must prove the reasonableness of the search or seizure.

*Russell v. State*, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986); *see also* 42 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 29.93 (2d ed.). The *Russell* rule has long been followed, but is not always observed in criminal trials.

An individual, later identified as Stephen Gayle, without a shirt but wearing lengthy denim short pants with a huge medallion around his neck, approached the undercover officers in their car parked on Thurmond Street just off North Lamar. Gayle asked, "What is up?" Davenport asked if he had a "20," meaning a twenty-dollar rock of cocaine. Gayle answered affirmatively but wanted to make the sale inside the car. Davenport got out and into the back seat of the vehicle. Gayle got into the front passenger seat and pulled the contraband out of a brownish H.E.B. grocery store plastic bag in his waistband. The sale was completed. Davenport, who was equipped with a body microphone, said she gave a signal so the backup officers would know the sale had taken place. Gayle asked for a ride to his home. Officer Gabler pulled the car up to 801 Thurmond Street where there was an apartment complex. Gayle got out of the car. As the undercover officers drove away, Davenport broadcast a physical description of Gayle to the "take down" unit.

Chris Vallejo, an Austin police officer, was acting as "close cover" at the time of the incident. He saw Gayle standing in an area with two females, one of whom was appellant, before Gayle approached the undercover officers. Vallejo did not see Gayle drive off with the officers because of his position. When the "take down" police vehicles arrived, Vallejo ran southbound into the complex in question. He did not see Gayle until after Gayle had been taken into custody.

Officer John Buell was a uniformed member of the "take down" unit. As he drove slowly towards Thurmond Street in his marked police vehicle, he could hear over the radio the events as they occurred. Buell saw a man meeting the description of the man described over the police radio sitting on a curb. The man, later identified as Gayle, saw Buell. He got up, walked, and then ran between the buildings nearby. Buell gave chase but lost sight of Gayle. A woman came

4

out of an apartment, asked Buell if he was looking for the man with no shirt on. When Buell responded, "Yes," she told him the man had entered apartment 102. Buell and other officers entered the apartment and found Gayle in the upstairs bathroom. They took pictures of him and he was identified by the undercover officers as the man who sold them crack cocaine.

Austin Police Officer Brian Jones and his partner, Officer Kurt Thomas, were part of a "take down" unit. Jones heard Gayle's description over the police radio and learned that Gayle was running through the apartment complex. Jones got out of his vehicle to search. He identified appellant as a woman that he saw near apartment 102. She told him that no one was in the apartment and kept walking. Jones looked up at an upstairs window in that apartment and saw the blinds moving. He and other officers forced entry into the apartment when Sergeant Stone gave the order, Officer Thomas ran into the complex after the take down signal was given. He participated in the forced entry. Later, he and Jones took Gayle to jail, and then assisted in executing the search warrant which was later issued for apartment 102.

Officer Sam Bryson and his partner, Corey McKenna, arrived on the scene as Gayle was fleeing through the complex. After the forced entry into apartment 102, McKenna, who had experience as a police officer with narcotics, pointed out to Bryson that in plain view in the living room there was some marihuana and some crack cocaine in a clear plastic bag.

Sergeant Jeffrey Stone was the supervisor of the "buy-bust" operation. After the take down signal was given, he identified Precious Hernandez as the woman who told the officers that Gayle had fled into apartment 102. Stone reported that he gave the order to force open the locked front door of the apartment. The officers found Gayle in the upstairs bathroom with a brown plastic

5

bag similar to the bag described by undercover officer Davenport. Stone related that the clear plastic bag seen by Officer McKenna downstairs was entirely different from the bag found with Gayle. Stone explained that the officers acting as a team had followed Gayle into the apartment in "hot pursuit" and made a warrantless arrest for the felony offense of possession of cocaine. Stone further explained the actions of the officers were based on the exigent circumstances that Gayle might destroy evidence. Stone related that the officers sought a search warrant for the contraband that they observed in the apartment. The evidence shows that a search warrant was issued. There was little testimony about the execution of that warrant and the seizure of the controlled substances which formed the bases of this prosecution.

Appellant Alicia Phillips testified at the suppression hearing that she knew Gayle from "the neighborhood"; that earlier on the date in question he asked her if he could use her bathroom. She said that in the past Gayle had left items at her apartment but he did not live there. Appellant related that on the date in question her front door was unlocked but the screen door was closed. She saw Gayle in the evening of April 27, 2001, but he walked down the sidewalk and she lost sight of him. Later, appellant saw the officers at the front door of her apartment saying, "Open the door." When she approached, the officers told her to stay back. She denied that she told Officer Jones that no one was in the apartment. The officers "kicked the door in." After Gayle was removed from the apartment, appellant was told that she was being detained because she had controlled substances in her home. She admitted that some of her friends may have left marihuana cigarette butts in an ashtray, but she denied possessing crack cocaine or knowing about its presence before Gayle ran inside her apartment. The motion to suppress was denied.

6

**Standard of Review**

When reviewing a trial court's ruling on a motion to suppress evidence, we review de novo questions of law as well as "mixed questions of law and fact" that do not turn on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Hayes v. State*, 132 S.W.3d 147, 151 (Tex. App.—Austin 2004, no pet.). By contrast, we afford almost total deference to a trial court's determination of the historical facts that the record supports and are based on an evaluation of credibility and demeanor. *Leach v. State*, 35 S.W.3d 232, 234-35 (Tex. App.—Austin 2000, no pet.). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses including the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *McClain v. State*, 984 S.W.2d 700, 702 (Tex. App.—Texarkana 1998, no pet.).

**Legality of the Warrantless Arrest**

With this background, we turn next to the legality of the warrantless arrest of Stephen Gayle in appellant's apartment after a forced entry. In Texas, the authority to arrest a suspect without a warrant is governed exclusively by statute. *Dyer v. State*, 125 S.W.3d 460, 463 (Tex. Crim. App. 2003); *Simpson v. State*, 709 S.W.2d 791, 802 (Tex. App.—Fort Worth 1986, pet. ref'd). Unless one of the limited statutory exceptions apply, an arrest warrant is required. *Dyer*, 125 S.W.2d at 463; *Randall v. State*, 656 S.W.2d 687, 690 (Tex. Crim. App. 1983). Chapter fourteen of the code of criminal procedure provides the authority for most lawful warrantless arrests in this state. *Dyer*, 125 S.W.3d at 463 & n.1. This statutory authority is more restrictive than the requirements of the United

States Constitution as to warrantless arrests. *See Stevenson v. State*, 780 S.W.2d 294, 295 (Tex. App.—Tyler 1989, no pet.); c*f. United States v. Watson*, 423 U.S. 411, 420 (1976).

One of the statutory exceptions authorizing a warrantless arrest is found in article 14.01(b) of the code of criminal procedure which provides:

> A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.

Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 1977).

In the instant case, Gayle made the delivery or sale to undercover officer Kelly Davenport inside the unmarked police car. The offense was committed in the presence and view of Davenport and her partner, Gabler. Davenport was equipped with a body microphone broadcasting the details of the sale to the team of officers working on the "buy-bust" operation. As soon as Gayle left the car, Davenport gave a pre-arranged signal and immediately broadcasted a general description of Gayle to the other officers. After Gayle's arrest, Davenport and Gabler participated in his identification as the offender. The arrest of Gayle by the police team was valid under article 14.01(b) given the circumstances described including Davenport's bust signal. *See Willis v. State*, 688 S.W.2d 729, 730-31 (Tex. Crim. App. 1984), and its progeny. The officer viewing the offense need not make the actual arrest as long as he or she effectively participated in and was fully aware of the circumstances of the arrest. *Id.* Here, Davenport played a role in the arrest, and the arrest occurred soon after the commission of the offense. *Id.*; *Astran v. State*, 799 S.W.2d 761, 764 (Tex. Crim.

8

App. 1990); *Curry v. State*, 831 S.W.2d 485, 488 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).

The only detraction from the foregoing is the fact that the officers forced entry into appellant's apartment prior to Gayle's arrest. Does this call for a different conclusion as to the validity of the arrest? The answer is no.

Article 14.05 provides:

> In each case enumerated where arrests may be lawfully made without warrant, the officer or person making the arrest is justified in adopting all the measures which he might adopt in cases of arrest under warrant, except that an officer making an arrest without a warrant may not enter a residence to make the arrest unless:
>
> (1) a person who resides in the residence consents to the entry; or
>
> (2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant.

Tex. Code Crim. Proc. Ann. art. 14.05 (West Supp. 2004-05). *See generally Steelman v. State*, 93 S.W.3d 102 (Tex. Crim. App. 2002).

"[A] suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *United States v. Santana*, 427 U.S. 38, 42 (1976). In the instant case, exigent circumstances under the statute existed when the police were in hot pursuit of Gayle and attempting to prevent the destruction of evidence in his possession. *See LaHaye v. State*, 1 S.W.3d 149, 152 (Tex. App.—Texarkana 1999, pet. ref'd); *Curry*, 831 S.W.2d at 488; *see also Winter v. State*, 902 S.W.2d 571, 573 (Tex. App.—Houston [1st Dist.] 1995, no

9

pet.). We conclude that the arrest of Gayle inside appellant's apartment was valid under article 14.05(2).

The officers having properly entered appellant's apartment to arrest Gayle saw in plain view on a shelf a clear plastic bag which one experienced officer observed contained crack cocaine rocks. The bag was not seized. The officers obtained a search warrant for the apartment. What was stated in *Walter v. State*, 28 S.W.3d 538 (Tex. Crim. App. 2000), is here appropriate:

> Thus, whatever contraband they observed in plain view, in a place they legally had a right to be, was legally observed, and subject to use in an affidavit for search warrant. The Supreme Court has explained that the "plain view" doctrine is not really an "exception" to the warrant requirement because the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy.

*Id*. at 541.

The search warrant affidavit detailed the events of Gayle's arrest and the observation of the cocaine on a shelf in plain view in the apartment. There was little or no testimony about the execution of the search warrant except the inventory was introduced into evidence along with the warrant and affidavit.

In concluding the argument in his brief, appellant's counsel states:

> The issue in this case is not the validity of the warrant which on its face is valid, but rather the fact that the probable cause stated in the warrant is based on the prior illegal warrantless entry into appellant's apartment. Appellant was not present in the apartment at the time Gayle was found and is not challenging the validity of the Gayle's arrest or the drugs found that are not the basis of this prosecution. Rather, the police may not make a violent forced entry into appellant's apartment and then

10

claim "plain view" to obtain a warrant to search for what they have already found based on an illegal search.

The foregoing is not easily interpreted. It does not appear consistent. Appellant concedes that the search warrant affidavit is valid on its face but urges that the probable cause reflected in the affidavit was actually based on a prior illegal warrantless entry into appellant's apartment. The affidavit clearly reflects probable cause and is consistent with the events developed at the suppression hearing including the sale by Gayle of cocaine to undercover officers, Gayle's flight, the "hot pursuit," the forced entry into appellant's apartment, Gayle's arrest upstairs, and the observation downstairs of crack cocaine on a shelf "in plain view" when the officers were where they had a right to be. Appellant does not challenge the validity of Gayle's arrest or the seizure of any drugs from him, but contends that she was not present and that the forced entry into her apartment without her consent legally prevented the officers from being where they had a right to be with regard to claiming that any exposed items in the apartment were "in plain view." Thus, appellant appears to claim that the cocaine seized during the execution of the search warrant were the fruits of the poisonous tree. Appellant does not cite any authority supporting his theory that with regard to the "in plain view" doctrine officers may be where they had a right to be with regard to the prosecution of one individual, but at the same time may not be where they had a right to be with regard to the prosecution of another individual. We reject this argument under the circumstances presented.

We conclude that the trial court did not err in overruling the motion to suppress.

11

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Puryear and Onion[*]

Affirmed

Filed: March 10, 2005

Do Not Publish

---

[*]   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).