# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00169-CR

**The State of Texas, Appellant**

**v.**

**Bobby Drewy, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. C-1-CR-07-213198, HONORABLE JAN BRELAND, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State appeals the county court at law's order granting appellee Bobby Drewy's motion to suppress evidence in this prosecution for driving while intoxicated. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2008). The State asserts that the trial court erred by concluding that Drewy was arrested without probable cause and contends that Drewy's warrantless arrest was lawful. We will reverse the suppression order and remand the cause for further proceedings.

The only witness at the pretrial suppression hearing was Austin Police Officer Jonathan Riley. Riley testified that at 5:30 p.m. on Tuesday, July 3, 2007, he was dispatched to the intersection of Ed Bluestein and Loyola to assist firefighters with a vehicle fire. When he arrived, he observed a vehicle on the shoulder of the road, with smoke or steam rising from it. A firefighter drew Riley's attention to Drewy, who was standing about fifteen feet away from the disabled car.

The firefighter told Riley that when he arrived at the scene, Drewy was sitting behind the wheel of the vehicle with the key in the ignition; the engine was not running. The firefighter also told Riley that when Drewy got out of the car, he was holding a large pair of scissors or shears in "an ice-pick-type grip." The firefighter said that he had found this to be "alarming" but not frightening.

Riley testified that he heard Drewy talking to other people at the scene, and he "noticed that [Drewy] was talking quite a bit, and that his speech appeared to be slurred." When Riley himself spoke to Drewy, he detected "a strong odor of alcoholic beverage coming off his breath and his general person, [and] his eyes were dilated and bloodshot." Riley noticed that Drewy had a leather sheath attached to his belt and asked him if he had a knife. Drewy replied that he did, and he began to reach into his pocket. Riley testified that he believed that Drewy was reaching for a knife, so he "took hold of" Drewy and handcuffed him for safety's sake. Riley frisked Drewy and removed a knife from his pants pocket.[1] With Drewy's permission, Riley also took Drewy's wallet from his back pocket. Riley testified that Drewy "was somewhat combative, just not really cooperative," while the officer frisked him. Riley said that he continued to notice the alcoholic-beverage odor on Drewy's breath, his slurred speech, and his bloodshot eyes.

Riley testified that it was raining, traffic was heavy, and "there was no parking lot where I could conduct an investigation safely," so he "decided that I'd place Mr. Drewy [sic] and take him into custody and perform SFST's [standardized field sobriety tests] at a safer facility." Riley placed Drewy in his patrol car for transport to the county jail. Before leaving the scene, Riley looked inside Drewy's car and saw some empty beer cans and a half-empty bottle of vodka.

---

[1] Riley testified that he never saw the scissors or shears mentioned by the firefighter.

At the jail, Riley searched Drewy and found three small bags of marihuana. Riley then took Drewy to the video room, advised him of his rights, and administered the horizontal gaze nystagmous test. According to Riley, Drewy exhibited all six clues on this test. Drewy refused to perform the other field sobriety-tests, and he also refused to provide a breath sample. While in the video room, Drewy told Riley that he had been driving.[2] He also admitted having consumed one beer. Drewy denied drinking any of the vodka, which he said belonged to his brother who had been in the car earlier that day.

Drewy moved to suppress all statements made and evidence seized following his arrest. Drewy did not further identify in his motion or in his arguments below the evidence and statements that he sought to suppress, nor did he identify the point at which he contends that he was arrested. It was undisputed at the hearing, however, that Drewy was under arrest by the time he arrived at the jail. We will assume that Drewy was arrested at the time Bailey placed him in the patrol car and that Drewy sought to suppress all evidence seized and statements made thereafter.[3]

The motion to suppress alleged, among other things, that there was no probable cause or statutory justification for the warrantless arrest. During argument at the suppression hearing, the

---

[2] The prosecutor asked Riley, "How long had he said he'd been driving before he was pulled over or before the officers arrived on the scene?" Riley answered, "Approximately 15 minutes." The trial court understood this question and answer to mean that Drewy "[had] been driving for 15 minutes before he stopped."

[3] Riley was asked the grounds for Drewy's arrest. He answered, "At that time, for DWI and DWLS, which I believed he was driving with a suspended license." Riley explained that a driver's license check indicated that Drewy's license had been suspended. Riley did not say when the license check was conducted, and he acknowledged during cross-examination that the suspended license charge had been dropped. The State does not contend that Drewy was lawfully arrested for driving with a suspended license.

3

prosecutor urged that the officer's observations at the scene gave him probable cause to believe that Drewy had been driving while intoxicated. In reply, Drewy's counsel argued that there was no evidence that Drewy was "actually driving while he was intoxicated and [thus] there's no probable cause for the arrest."

In granting the motion to suppress, the trial court stated, "I think there's enough to show he was intoxicated. I think there's enough to show he was driving, but because of the nature of the sequence of events here, I don't think there's enough to establish probable cause that he was driving while he was intoxicated." The court added, "[W]e don't know what . . . happened after he stopped and we know that he had access to alcohol in the vehicle." The court later filed a written finding of fact that Riley's testimony at the hearing was credible.

### State's Arguments

The State filed both a notice of appeal and a motion to reconsider the suppression ruling. In the motion, the State asserted that: (1) the trial court misapplied the probable cause standard by requiring proof of the "while driving" element of the driving-while-intoxicated offense, (2) Drewy was lawfully arrested for public intoxication pursuant to article 14.01(b), and (3) Drewy was also lawfully arrested under the authority of article 14.03(a)(1). *See id*. art. 14.01(b) (West 2005), art. 14.03(a)(1) (West Supp. 2008). Drewy filed a written response. The trial court conducted a hearing on the motion to reconsider at which no witnesses testified, but at which counsel for both parties elaborated on their written arguments. At the conclusion of the hearing, the court overruled the motion to reconsider and reaffirmed the suppression order. In its brief to this Court,

4

the State makes the same arguments it made to the trial court in the motion for reconsideration and at the hearing on the motion.[4]

### *Standard of Review*

We use a bifurcated standard to review an order granting or denying a motion to suppress evidence. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost total deference to the trial court's determination of historical facts that the record supports and to the trial court's rulings on mixed questions of law and fact that turn on the credibility of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo those mixed questions of law and fact that do not turn on witness credibility. *Carmouche*, 10 S.W.2d at 327; *Guzman*, 955 S.W.2d at 89. In this case, there is no issue of witness credibility because the trial court expressly found that Riley's testimony was credible.

Probable cause is a fluid concept turning on the assessment of probabilities, not hard certainties, in particular factual contexts. *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). Probable cause to arrest exists when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not, a particular suspect has committed an offense. *State v. Garrett*, 22 S.W.3d 650, 653-54 (Tex. App.—Austin 2000, no pet.) (quoting *Hughes v. State*, 878 S.W.2d 142, 154 (Tex. Crim. App. 1992)). Probable cause must be examined in light of the totality of the

---

[4] Drewy challenges the State's arguments, but he does not contend that the arguments were not preserved for appeal.

circumstances established by the evidence. *Id*. at 654. Whether the facts support a finding of probable cause is a mixed question of law and fact that we review de novo. *Id*.

### *Driving While Intoxicated*

The State argues that the trial court erred by concluding that the evidence at the suppression hearing did not support a finding of probable cause to arrest Drewy for driving while intoxicated. As previously noted, the trial court found that Drewy drove his vehicle to the location where it was found burning on the afternoon in question and that Drewy was intoxicated when Riley spoke to him at the scene. Nevertheless, the court concluded that Riley did not have probable cause to arrest Drewy for driving while intoxicated because there was no evidence showing how long Drewy had been stopped at the side of the road before firefighters and the police arrived. The State urges that by so concluding, the trial court mistakenly required a showing of guilt beyond a reasonable doubt rather than a showing of probable cause.

Because there is no direct evidence showing how long Drewy had been stopped by the side of the road before the firefighters arrived, it is possible that he became intoxicated after stopping. It was because of this possibility that the trial court concluded that Riley did not have probable cause to believe that Drewy had driven while intoxicated. But Drewy's vehicle was on fire, a circumstance that suggests that emergency help was called soon after he stopped and that only a few minutes had passed before the firefighters arrived and Riley was dispatched to the scene. Drewy was unquestionably intoxicated when Riley spoke to him. We conclude that under the totality of the circumstances shown by the record, a person of reasonable caution would be warranted in the belief that, more likely than not, Drewy had been driving while intoxicated. In other words, even if Riley

6

could not be *certain* that Drewy had been driving while intoxicated, Riley could reasonably believe that Drewy had *probably* been doing so.

Although we conclude that Riley had probable cause to arrest Drewy for driving while intoxicated, this is not sufficient to warrant reversing the trial court's suppression order. In Texas, warrantless arrests are permissible only when authorized by statute. *Dyar v. State*, 125 S.W.3d 460, 463 (Tex. Crim. App. 2003). Article 14.01(b), the statute having widest application, permits an officer to arrest an offender without a warrant for any offense committed in the officer's presence or within the officer's view. Tex. Code Crim. Proc. Ann. art. 14.01(b). This statute did not authorize Riley to arrest Drewy for driving while intoxicated, even though the officer had probable cause to do so, because Riley was not present and did not see Drewy while he was driving. *See Elliott v. State*, 908 S.W.2d 590, 591-92 (Tex. App.—Austin 1995, pet. ref'd). Conceding this point, the State argues that Drewy was lawfully arrested pursuant to article 14.03(a)(1) for public intoxication.

### *Public Intoxication*

Article 14.03(a)(1) authorizes a police officer to arrest without a warrant persons found in suspicious places and under circumstances that reasonably show that such persons "have been guilty of" a felony, disorderly conduct, a breach of the peace, or public intoxication. Tex. Code Crim. Proc. Ann. art. 14.03(a)(1). A person is guilty of public intoxication if he appears in a public place while intoxicated to the degree that he may endanger himself or another. Tex. Penal Code Ann. § 49.02(a) (West Supp. 2008). Drewy argues that article 14.03(a)(1) does not apply here because he was not in a suspicious place when he was found and arrested.

7

Very few places are inherently suspicious. *Dyar v. State*, 59 S.W.3d 713, 715 (Tex. App.—Austin 2001), *aff'd*, 125 S.W.3d 460, 468 (Tex. Crim. App. 2003). Instead, a place becomes "suspicious" within the meaning of article 14.03 based on the surrounding circumstances. *Id*. at 715-16 (collecting cases); *see also Dyar*, 125 S.W.3d at 464-66 (same). In *Thomas v. State*, for example, three men walking along a sidewalk during the middle of the day were deemed to be in a "suspicious place" because the arresting officer knew that a house in the neighborhood had recently been burglarized, one of the men was carrying a television set, and the men had been seen depositing property in an abandoned house. 681 S.W.2d 672, 676 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). In *State v. Parson*, the circumstances that gave the arresting officer probable cause to believe that the defendant was guilty of a hit-and-run accident three hours earlier were held to support the conclusion that the defendant's front yard, where he was found and arrested, was a "suspicious place." 988 S.W.2d 264, 268-69 (Tex. App.—San Antonio 1998, no pet.).

In *Dyar*, the defendant was arrested without a warrant in a hospital. 59 S.W.3d at 714. He had been taken to the hospital shortly after midnight on New Year's Eve from the scene of a one-car rollover accident in which he had been driving. He exhibited several signs of intoxication, and he admitted to the officer that he had been "partying." *Id*. We held that these circumstances warranted the determination that Dyar had been found in a "suspicious place" under circumstances that reasonably showed that he was guilty of driving while intoxicated, which is a breach of

8

the peace. *Id*. at 716-17. The court of criminal appeals reached the same conclusion. *Dyar*, 125 S.W.3d at 468.[5]

We have held that Riley had probable cause to believe that Drewy had been operating a motor vehicle in a public place while intoxicated. There can be no dispute that an intoxicated person who drives a motor vehicle on a busy street in the rain is a danger both to himself and to others. Moreover, the evidence shows that Drewy was still intoxicated as he stood near his disabled vehicle. Riley testified that "there was no parking lot where I could conduct an investigation safely." According to the officer, Drewy was "combative, just not real cooperative." We hold that these circumstances warrant the conclusion that Drewy had been found in a "suspicious place" under circumstances that reasonably showed that he was guilty of public intoxication. Therefore, Riley was authorized to arrest Drewy without a warrant for public intoxication pursuant to article 14.03(a)(1). We do not reach the State's contention that an arrest for public intoxication was authorized by article 14.01(b).

Drewy argues that even if Riley had probable cause to arrest him for public intoxication, the officer had a limited discretion to release him instead of arresting him. *See* Tex. Code Crim. Proc. Ann. art. 14.031(a) (West 2005). Drewy argues that the State offered no evidence regarding the application of article 14.031(a) and complains that, because no witnesses were called at the hearing on the State's motion for reconsideration, he did not have the opportunity to cross-examine Riley regarding the application of the statute. However, article 14.031(a) states

---

[5] Despite the holding in *Dyar*, the State does not argue that article 14.03(a)(1) authorized Drewy's arrest for driving while intoxicated.

only that an officer *may* release a publicly intoxicated person under the appropriate circumstances; Drewy cites no authority holding that an officer is required to do so.

For the reasons stated, we sustain the State's contention that the county court at law erred by granting Drewy's motion to suppress evidence. The suppression order is reversed and the cause is remanded to the trial court for further proceedings.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Reversed and Remanded

Filed: October 23, 2008

Do Not Publish

10