Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

# MEMORANDUM OPINION

Nos. 04-08-00003-CR & 04-08-00004-CR

Robert Julian **RIOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court Nos. 2006-CRS-874-D4 & 2006-CRS-876-D4
Honorable Oscar J. Hale Jr., Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
    Karen Angelini, Justice
    Phylis J. Speedlin, Justice

Delivered and Filed:    May 20, 2009

AFFIRMED

Appellant Robert Julian Rios appeals his convictions for aggravated sexual assault, engaging in organized criminal activity, and aggravated kidnapping. In five issues, Rios contends the evidence was legally and factually insufficient to support his conviction for engaging in organized criminal activity, and the trial court erred when it denied his motion to suppress and admitted certain testimony at trial. We overrule these issues and affirm the trial court's judgments.

BACKGROUND

On the evening of September 7, 2006, police were dispatched to the 2200 block of West Anna in Laredo, Texas, to respond to an assault-in-progress. Rios, a suspect in the assault,[1] was found in a house located at 2218 West Anna and arrested by police without a warrant. In the house, police found the two other assault suspects and three women who told police they had been kidnapped by Rios and others and held for ransom. One of the women told police she was also sexually assaulted by Rios. Thereafter, police seized various items of evidence found in the house, including articles of clothing, belts, bedding, and a toy shotgun, which were later admitted at trial.

In two separate indictments, Rios was charged with four counts of aggravated sexual assault and three counts of engaging in organized criminal activity by committing the predicate offenses of aggravated kidnapping. Rios pled not guilty to the offenses charged in the indictments and moved to suppress his warrantless arrest and the tangible evidence seized in connection with his arrest. The motion to suppress was denied by the trial court. No findings of fact were filed.

The offenses charged in the indictments were tried together to a jury. The jury convicted Rios of four counts of aggravated sexual assault, one count of engaging in organized criminal activity, and two counts of aggravated kidnapping. This appeal ensued.

SUFFICIENCY OF THE EVIDENCE

In issues one and two, Rios asserts the evidence was legally or factually insufficient to support his conviction for engaging in organized criminal activity because there was no evidence or insufficient evidence that one of the co-defendants named in the indictment, Olga Maria Martinez, was involved in the offense. Rios does not assert there was no evidence or insufficient evidence that

---

[1]This assault was not adjudicated in the underlying proceedings.

he and the two other co-defendants named in the indictment were involved in the offense.

The sufficiency of the evidence to support a conviction is not measured by the jury charge actually given but by the elements of the offense as defined by a hypothetically correct charge. *Gollihar v. State*, 46 S.W.3d 243, 252 (Tex. Crim. App. 2001). A hypothetically correct jury charge "would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

The law provides that a person commits the offense of engaging in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit...aggravated kidnapping." TEX. PENAL CODE ANN. § 71.02 (Vernon Supp. 2008). Under section 71.02 of the Texas Penal Code, "combination" means "three or more persons who collaborate in carrying on criminal activities, although" "participants may not know each other's identity;" "membership in the combination may change from time to time;" and "participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations." TEX. PENAL CODE ANN. § 71.01 (Vernon 2003). In proving the existence of a combination, the State needs to prove the participation of at least three of the named combination members or participants—including the defendant; however, the State need not prove the participation of all of the named combination members or participants. *Rodriguez v. State*, 90 S.W.3d 340, 354 (Tex. App.—El Paso 2001, pet. ref'd) (stating the State need only prove the participation of at least three of the named members of the combination); *Crum v. State*, 946 S.W.2d 349, 356 (Tex.

App.—Houston [14th Dist.] 1997, pet. ref'd) (holding evidence was not insufficient to support conviction for engaging in organized criminal activity because the State failed to prove all eleven people named in the jury charge were combination members or participants); *Jones v. State*, 907 S.W.2d 850, 854 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding State was not required to prove all of the individuals named in the jury charge participated in the criminal combination).

Here, Rios argues the State was required to prove the involvement of Rios and the three other individuals named in the application paragraph of the jury charge, including Olga Maria Gonzalez.[2] Rios acknowledges that generally the State is not required to prove the participation of all of the co-defendants named in the charge; however, he argues this case is different. Emphasizing the language in *Malik* which states that the hypothetically correct jury charge is one that is "authorized by the indictment," Rios suggests the indictment here elevated the State's burden to require a showing of Olga Maria Martinez's participation in the combination. We disagree. Although the hypothetically correct jury charge may not be used "to wholly re-write the indictment to charge a different offense," it "may disregard certain unnecessarily pled indictment allegations on sufficiency review." *See Gollihar*, 46 S.W.3d at 253. Here, the sufficiency of the evidence must be measured against a hypothetically correct jury charge which would disregard any unnecessarily pled allegation that Olga Maria Martinez was involved in the offense.[3]

---

[2]Here, the charge instructed the jury on the statutory definition of the term "combination,"*i.e.*, "three or more persons who collaborate in carrying on criminal activities." TEX. PENAL CODE ANN. § 71.01 (Vernon 2003). Thereafter, the charge instructed the jury that to find Rios guilty of the offense of engaging in organized criminal activity, it had to find that "[] Rios, Raul Ramos, Damaso Peche, and Olga Maria Gonzalez" committed the offense of aggravated kidnapping "with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . ."

[3]Count I of the indictment alleged:

> **ROBERT JULIAN RIOS [], RAUL RAMOS, DAMASO PECHE AND OLGA MARIA GONZALEZ**, did then and there, with the intent to hold "Estella" for ransom or reward, intentionally or knowingly abduct "Estella" by restricting the movements of said "Estella" without

Rios further relies on *Fee v. State*, 841 S.W.2d 392 (Tex. Crim. App. 1992), which also involved a conviction for engaging in organized criminal activity. In *Fee*, the court of criminal appeals held the sufficiency of the evidence should have been measured against the jury charge actually given. *Id*. at 396. ("[S]o long as the State does not object to a jury charge that [] enhances its burden, sufficiency of the evidence will be measured against that charge."). *Id*. On appeal, Rios contends "[t]his rule has not been modified by *Malik* or *Gollihar*." Again, we disagree. Although not expressly overruled in *Malik* or *Gollihar*, *Fee* is no longer viable for the principle cited. *See Posada v. State*, No. 03-99-00520-CR, 2001 WL 987541, at *10 (Tex. App.—Austin August 30, 2001, no pet.) ("Appellant overlooks that *Fee* and *Ortega* were a part of the *Benson Boozer* line of cases which was overruled by *Malik*....") (mem. op., not designated for publication). We conclude the evidence was not legally or factually insufficient to support a conviction of engaging in organized criminal activity as argued by Rios. Accordingly, we overrule issues one and two.

### LEGALITY OF THE ARREST

In issue three, Rios argues the trial court erred in denying his motion to suppress because Rios was arrested without a warrant, probable cause, or other lawful authority. In response, the State argues Rios's arrest was authorized under Article 14.03 of the Texas Code of Criminal Procedure because Rios was found in a suspicious place and under circumstances which reasonably show he

---

her consent so as to interfere substantially with her liberty, by confining her, with the intent to prevent her liberation, by secreting or holding her in a place where she was not likely to be found.

And the defendant's [sic] did then and there commit said offense with the intent to establish, maintain, or participate in a combination or in the profits of a combination who collaborated in carrying on said criminal activity.

was guilty of an offense listed in Article 14.03(a)(1), namely a breach of the peace.[4] *See* CODE CRIM. PROC. ANN. art. 14.03(a)(1) (Vernon Supp. 2008).

For a warrantless arrest to be proper under article 14.03(a)(1), the State must establish the officer had probable cause to arrest the defendant and the defendant was in a suspicious place. *Dyar v. State*, 125 S.W.3d 460, 467-68 (Tex. Crim. App. 2003); *State v. Parson*, 988 S.W.2d 264, 266 (Tex. App.—San Antonio 1998, no pet.). Probable cause exists when the police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App.1997). Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. *Id*.

Courts engage in a two-part test in determining whether an arrest is proper under article 14.03(a)(1). *Dyar*, 125 S.W.3d at 467-68. First, courts examine the facts and circumstances known to the officer that would reasonably show the defendant has committed an offense listed in article 14.03(a)(1). *See id*. Second, courts examine the facts and circumstances in relation to a particular place to determine whether the defendant was found in a suspicious place. *See id*. In determining if an arrest is proper under article 14.03(a)(1), courts examine the totality of the circumstances. *Id*.

---

[4]Article 14.03 provides in part:

(a) Any peace officer may arrest, without warrant:

(1) persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code, or threaten, or are about to commit some offense against the laws;

CODE CRIM. PROC. ANN. art. 14.03(a)(1) (Vernon Supp. 2008).

A "breach of the peace" includes all violations of the public peace or order. *Woods v. State*, 213 S.W.2d 685, 687 (Tex. Crim. App. 1948). The term encompasses "a disturbance of public order by an act of violence" and the offense may consist of acts of "an invasion of the security and protection which the laws afford to every citizen."*Id*.; *see also Miles v. State*, 241 S.W.3d 28, 40 (Tex. Crim. App. 2007). Whether an act constitutes a breach of the peace must be determined on a case-by-case basis, looking to the facts and circumstances surrounding the act. *Cunningham v. State*, No. 04-03-00935-CR, 2004 WL 2803220, at *3 (Tex. App.—San Antonio Dec. 8, 2004, no pet.) (mem. op., not designated for publication).

Like probable cause, the determination of whether a place is a "suspicious place" is highly fact-specific. *Dyar*, 125 S.W.3d at 468. Few places are inherently suspicious, but a place may become suspicious because of facts and circumstances known to the arresting officers and any reasonable inferences which can be drawn from those facts. *Parson*, 988 S.W.2d at 268 (concluding front yard was a suspicious place when police found defendant there standing next to damaged truck and defendant smelled of alcohol and he became upset when informed that persons had been injured in a hit and run accident); *Crowley v. State*, 842 S.W.2d 701, 703 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (concluding defendant's garage was a suspicious place when eyewitness followed her there after defendant fled the accident). Different factors have been used to determine if a place is suspicious. *Parson*, 988 S.W.2d at 268-69. A place can be suspicious because: (1) an eyewitness or police officer connected the place to the crime; (2) a crime occurred there or the police reasonably believed a crime occurred there; (3) specific evidence directly connected the defendant or the place with the crime; or (4) the defendant's behavior was a factor in determining whether a place was suspicious. *Id*.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We give almost total deference to a trial court's determination of historical facts and review de novo the court's application of the law to those facts. *Id.* When the trial court makes no explicit findings of historical facts, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supporting its ruling, if those findings are supported by the record. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000).

Here, the suppression hearing evidence showed that on September 7, 2006, Laredo police officers responded to an assault-in-progress call in the 2200 block of West Anna in Laredo, Texas. When the officers arrived on the scene, they found a man who had been badly beaten and a woman who had witnessed the assault. The officers learned from the assault victim and the eyewitness that three men had beat up the man in the middle of a public street and then had run into a nearby house located at 2218 West Anna. The assault victim and the eyewitness gave police descriptions of the three men. One of the men was described as having multiple tattoos. After talking to the assault victim and the eyewitness, police officers went to the house at 2218 West Anna, announced their presence, and knocked on the front and back doors. No one answered. An officer then noticed a side door which was ajar and blocked by furniture, making access to the house troublesome. Peering through this open door, the officer noticed a man with multiple tattoos who matched the description of one of the assault suspects. Another officer recognized the man as Rios and knew he was a member of the "Los Pistoleros" gang. The officers asked Rios to show them his hands and Rios refused to comply. After repeated requests, Rios finally showed the officers his hands and the officers entered the house. Rios was taken out of the house and handcuffed. The officers then checked the house for

other suspects, threats, or victims. Once Rios was taken outside, the assault victim and the eyewitness identified Rios as one of the men involved in the earlier assault.

Viewing the suppression hearing evidence in a light most favorable to the trial court's ruling, and based on the totality of the circumstances, we are of the opinion that the trial court could have properly concluded Rios's arrest was authorized under Section 14.03(a)(1). The facts and circumstances known to police reasonably show Rios committed a breach of the peace. *See Woods*, 213 S.W.2d at 687-88 (finding breach of peace when one person assaulted another in a public place in the presence of others). After finding a man who had been "badly beaten" in the middle of the street by three men and obtaining descriptions of the assault suspects, officers went to the house where the assault suspects reportedly fled. Police then observed Rios inside the house, and he matched the description of one of the assault suspects.

Additionally, the facts and circumstances known to police reasonably show Rios was found in a suspicious place. Of particular importance here is the information provided by the eyewitness and the assault victim about the house at 2218 West Anna and Rios's own behavior in failing to comply with police requests. Rios was seen inside the house where the three assault suspects reportedly fled, and Rios matched the description of one of the assault suspects. Plus, the partially opened door appeared to be barricaded by furniture, and Rios repeatedly refused to comply with requests from police that he show them his hands. We conclude the facts and circumstances known to the officers and reasonable inferences to be drawn from these circumstances show Rios was found in a suspicious place.

Rios argues there was no probable cause to arrest Rios because there was no showing the eyewitness provided the police with reasonably trustworthy information. We disagree. As previously

stated, probable cause exists when the police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. *Guzman*, 955 S.W.2d at 87. Here, police observed the injuries inflicted on the assault victim themselves and spoke with both the eyewitness and the assault victim at the scene. The eyewitness and the assault victim provided information about the assault, gave descriptions of the three suspects, and told police the suspects ran into the house at 2218 West Anna. When considered as a whole, the record shows there was reasonably trustworthy information to support Rios's arrest. We, therefore, overrule issue three.

LEGALITY OF THE SEARCH

In issue four, Rios argues the trial court should have granted his motion to suppress because he established his standing to contest the search of the house at 2218 West Anna, and the initial entry and subsequent search was unreasonable under the Fourth Amendment of the United States Constitution. In response, the State argues the trial court properly denied Rios's motion to suppress because the initial entry into the house was made under exigent circumstances, and the subsequent search of the premises was an authorized protective sweep.

### 1. Standing to Contest the Search of 2218 West Anna

As a preliminary matter, the burden was on Rios to establish his standing to contest the search at 2218 West Anna. *See Handy v. State*, 189 S.W.3d 296, 299 n.2 (Tex. Crim. App. 2006) (stating defendant seeking to suppress evidence obtained during a search always has the burden of proving his standing to contest the search). To establish standing, Rios had the burden of proving he had a legitimate expectation of privacy in the place searched. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (holding non-overnight guest did not have standing to object to search of

house). Because Rios, as the party asserting a privacy interest, had greater access to the relevant evidence, Rios had the burden of proving facts establishing a legitimate expectation of privacy. *See id*. To establish a legitimate expectation of privacy, Rios was required to show that (1) Rios, by his conduct exhibited an actual, subjective expectation of privacy in the place searched, and (2) Rios's expectation of privacy was one that society accepts as reasonable. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979). In determining whether Rios's alleged expectation of privacy is one that society accepts as reasonable, we must consider (1) whether Rios had a property or possessory interest in the place invaded; (2) whether Rios was legitimately in the place invaded; (3) whether Rios had complete dominion or control and the right to exclude others; (4) whether, prior to the intrusion, Rios took normal precautions customarily taken by those seeking privacy; (5) whether Rios put the place to some private use; and (6) whether Rios's claim of privacy is consistent with historical notions of privacy. *See Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002). None of these factors is dispositive; rather, we examine the circumstances surrounding the search in their totality. *See id*.

An appellate court generally reviews the issue of standing to contest a search de novo. *Parker v. State*, 182 S.W.3d 923, 925 (Tex. Crim. App. 2006). However, at a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of witnesses. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Therefore, "the [trial court] may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted." *Id*. As the reviewing appellate court, we must afford almost total deference to the trial court's determination of a witness's credibility. *Id*. at 856. Thus, when the issue of standing turns solely on the credibility of a witness, we must afford almost total deference to the trial court's determination. *See id*.

The only evidence offered to establish Rios's standing was his own conclusory testimony that he was living at 2218 West Anna on the day he was arrested and had been living there for three months. Rios, however, provided no details about this living arrangement. Rios did not explain who owned or rented the house. Nor did Rios state he was an invited guest, or indicate he kept any personal belongings at the house. Plus, as to the factors related to whether the expectation of privacy was one that society accepts as reasonable, Rios presented no evidence that he had a property or possessory interest in the house at 2218 West Anna; that he was legitimately in the house at 2218 West Anna; that he had complete dominion or control and the right to exclude others; that, prior to the search, he took normal precautions customarily taken by those seeking privacy; that he put the place to some private use; and that his claim of privacy was consistent with historical notions of privacy.

Moreover, although the State did not offer any controverting evidence, the State certainly disputed Rios's claim that he lived at 2218 West Anna. On cross-examination, the State elicited testimony that Rios did not know the zip code or the phone number for 2218 West Anna; that none of the bills were under Rios's name; and that even though Rios claimed he lived at the house with his friend Damaso Peche and Peche's uncle, Rios could not recall Peche's uncle's name.

The trial court observed Rios's demeanor and was free to disbelieve any or all of Rios's testimony. *See Ross*, 32 S.W.3d at 856. If the trial court disbelieved Rios's testimony that he was living at 2218 West Anna at the time of the search, it could have properly denied the motion to suppress because Rios failed to prove his standing to contest the search.

### 2. Exigent Circumstances and Protective Sweep

Even assuming Rios proved his standing to contest the search, the trial court still could have denied the motion to suppress because the State established the initial entry into the house was made

under exigent circumstances and the subsequent search of the premises was an authorized protective sweep.

The purpose of the Fourth Amendment is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusion. *Villarreal*, 935 S.W.2d at 138. Reasonableness depends on a balance between the individual's Fourth Amendment interests and the promotion of legitimate governmental interests. *Maryland v. Buie*, 494 U.S. 325, 331 (1990). There are a number of exigent circumstances under which a warrantless entry into a residence is a reasonable reaction by a police officer. *McNairy v. State*, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991). These exigent circumstances usually involve factors pointing to some danger to an officer or victims, an increased likelihood of apprehending a suspect, or possible destruction of evidence. *Id.*

Additionally,"[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 337. A protective sweep is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000). The sweep must not be a full search of the premises. *Id*. at 816. Rather, it may only extend to a cursory inspection of those spaces where a person may be found and may only last long enough to dispel the reasonable suspicion of danger. *Id*. at 816-17.

Here, Rios's primary argument is police could have waited to enter the house until they obtained a search warrant because the officers were investigating "a mere street brawl." Nevertheless, when viewed in the light most favorable to the trial court's ruling, the record shows there were exigent circumstances here to justify the officers's warrantless entry into the house. The record shows the police

went to the house at 2218 West Anna to investigate a breach of the peace and this investigation intensified quickly. Once the officers arrived at the house, they spotted Rios through the partially-opened and obstructed door, realized Rios matched the description of one of the assault suspects, identified Rios as a known gang member, and saw that Rios repeatedly refused to comply with police requests. Of additional concern to the officers was the fact that the other two assault suspects were not visible and the officers did not know where they were. Given that the officers had announced their presence and knocked on the front and back doors, the officers could have reasonably believed the other assault suspects were aware of the officers's presence and posed an imminent threat to the safety of the officers. Thus, the trial court could have properly concluded the State established the existence of exigent circumstances to justify the officers's warrantless entry in the house.

The trial court could have also concluded the search of the premises immediately following the Rios's arrest was reasonable as a protective sweep to ensure the safety of the officers at the scene. At the suppression hearing, an officer testified that the purpose of the subsequent search of the premises was to "check for other threats, suspects, or victims." This was reasonable given that police had information that three assault suspects had fled into the house, the assault suspects had been made aware of the police presence, and Rios had exhibited uncooperative behavior toward police. Based on the record before us, the trial court could have concluded the State established exigent circumstances justifying the officers's warrantless entry into the house and their need to perform a protective sweep of the premises in conjunction with Rios's arrest.

We conclude the trial court could have properly denied the motion to suppress on the ground the initial entry was justified by exigent circumstances and the subsequent search of the premises was an authorized protective sweep. We, therefore, overrule issue four.

## ADMISSION OF EVIDENCE

In issue five, Rios argues his Confrontation Clause rights were violated when the trial court allowed Laredo police officer Rene Rolando Alvarado to testify at trial about certain statements made by the assault eyewitness. Rios objected to the admission of these statements on both hearsay and Confrontation Clause grounds. Both objections were overruled. The hearsay objection was overruled based on the excited utterance exception. *See* TEX. R. EVID. 803(2). On appeal, Rios complains only about the overruling of the Confrontation Clause objection. In response, the State argues the trial court properly overruled the Confrontation Clause objection and admitted the eyewitness's statements because they were nontestimonial in nature. We agree with the State.

At trial, Alvarado testified he was one of the first officers to respond to the assault-in-progress call on September 7, 2006, and he testified as follows. Upon arriving at the 2200 block of West Anna, Alvarado saw a woman, who was excited, waving her arms at him. Alvarado approached the woman, who was referred to as Ms. Mendoza at trial, and she immediately stated that three men had attacked her son and then ran toward the house at 2218 West Anna. Alvarado saw and spoke to Mendoza's son, the assault victim, who Alvarado described as "badly beaten" with "blood all over his head" and who "appeared disoriented." After talking to Mendoza and the assault victim, Alvarado radioed for an ambulance and additional officers.

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. *Davis v. Washington*, 547 U.S. 813, 822 (2006). Here, the record shows not only that Mendoza was seeking assistance from Alvarado, but also that the primary purpose of Alvarado's inquiry was to allow police to provide assistance to an ongoing emergency. *See*

*Vinson v. State*, 252 S.W.3d 336, 339-40 (Tex. Crim. App. 2008) (concluding trial court could have concluded that assault victim's initial statements made while an officer was assessing the situation and the assault suspect was not secured were nontestimonial in nature). Because Mendoza's statements that three men had attacked her son and then ran toward the house at 2218 West Anna were nontestimonial in nature, the trial court did not err in admitting this evidence. We, therefore, overrule issue five.

## CONCLUSION

The trial court's judgments are affirmed.

Karen Angelini, Justice

DO NOT PUBLISH