Affirmed and Opinion filed July 27, 2010. 


 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00209-CR



Joe Cruz Banda,
Jr., Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the County Criminal Court at Law No. 7

Harris County, Texas

Trial Court
Cause No. 1525555



 

OPINION 

Appellant Joe Cruz Banda, Jr. pleaded guilty to
misdemeanor driving while intoxicated.  In two issues, appellant challenges the
trial court’s denial of his motion to suppress evidence.  We affirm.  

Factual and Procedural
Background

In May 2008, William White and his wife were driving
on a highway when White was forced to veer into an emergency lane to avoid
being struck by a Ford Taurus.  White observed the Taurus travelling at
inconsistent speeds and failing to stay within one lane.  He also saw the
driver drinking from a bottle covered by a brown bag.  White began following
the Taurus and called 911 to report a possible drunk driver.  The Taurus soon
exited the freeway and pulled into a convenience store, where the driver went
inside and made a purchase.  White stopped near the convenience store and gave
the 911 dispatcher a physical description of the driver.  After the Taurus left
the convenience store, White saw the driver open the driver’s side door and throw
two empty beer cans into the street.  White continued following the Taurus
until it turned into a neighborhood and stopped in a residential driveway. 
White parked a short distance from the residence and observed the driver stay
in the Taurus for a short time, then enter the garage where several individuals
were gathered.  White stayed on the phone with the 911 dispatcher for
approximately ten minutes until police officers arrived at his location.  

            Officer Miguel
Daniel was the first officer to arrive at the scene.  White recounted the
evening’s events and described the Taurus’s driver to Officer Daniel.  Officer
Daniel then approached the residence and asked the individuals in the garage
who had been driving the Taurus.  A few moments later, appellant responded that
he had been driving the vehicle and agreed to speak with Officer Daniel outside
the garage.  After appellant left the garage, Officer Charles Bartlett arrived
at the scene and began speaking with White.  Officer Daniel subsequently
brought appellant to White’s vehicle, and White identified appellant as the individual
he saw driving the Taurus.  

            Appellant
informed the police that he had recently returned to his home after driving the
Taurus to drop an acquaintance off at another location and stopping to buy ice
for a party being held at his home.  As Officer Bartlett spoke with appellant,
he noticed that appellant had slurred speech and glassy eyes, as well as a
strong odor of alcohol about him.  Officer Bartlett then administered the
one-leg-stand, walk-and-turn, and Horizontal Gaze Nystagmus (HGN) tests.  Appellant
exhibited six clues on the HGN test and was unable to complete the remaining
two tests.  After observing appellant’s responses to these tests, Officer
Bartlett placed appellant under arrest for driving while intoxicated.  

Appellant was charged with misdemeanor driving while
intoxicated.  Appellant filed a motion to suppress evidence challenging the
legality of his arrest and seeking to suppress “any and all evidence” related
to his arrest.  Following a suppression hearing, the trial court denied
appellant’s motion.  After appellant pleaded guilty to the charged offense and
true to the enhancement allegations, the trial court assessed punishment at
thirty days’ confinement in the Harris County Jail.  This appeal followed.  

Standard of Review

We review a trial court’s ruling on a motion to
suppress evidence under a bifurcated standard of review.  Amador v. State,
221 S.W.3d 666, 673 (Tex. Crim. App. 2007).  Trial judges are uniquely situated
to observe the demeanor and appearance of any witnesses and, as the sole
fact-finder at a suppression hearing, may believe or disbelieve any portion of
a witness’s testimony and make reasonable inferences from the evidence
presented.  Amador v. State, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009);
Wiede v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). 
Accordingly, we afford a great deal of deference to the trial court’s
determination of historical facts.  Amador, 221 S.W.3d at 673.  However,
whether a specific search or seizure is reasonable or supported by probable
cause is a question of law subject to de novo review.  Dixon v. State,
206 S.W.3d 613, 616 (Tex. Crim. App. 2006).  

During our review, we must consider all the evidence in
the light most favorable to the trial court’s ruling.  State v. Iduarte,
268 S.W.3d 544, 548 (Tex. Crim. App. 2008).  When, as here, the trial court
enters findings of fact after denying a motion to suppress, we must determine
whether the evidence—viewed in the light most favorable to the trial court’s
decision—supports the findings.  Keehn v. State, 279 S.W.3d 330, 334
(Tex. Crim. App. 2009).  We then review the trial court’s legal conclusions de
novo and will uphold the ruling so long as it is supported by the record and
correct under any legal theory applicable to the case.  Iduarte, 268
S.W.3d at 548.  

 

Analysis

            Appellant raises
two issues challenging the trial court’s denial of his motion to suppress
evidence.  In his first issue, appellant contends he was unlawfully seized because
the officers involved in the arrest lacked reasonable suspicion to believe he
drove while intoxicated.  In his second issue, appellant argues he was
subjected to an unlawful warrantless arrest because the police lacked probable
cause and no exception to the warrant requirement justified his warrantless
arrest.  Because each of appellant’s issues require an analysis of similar
facts, we will address the issues together.  

1.      Burden
of Proof

A defendant seeking to suppress evidence on the basis
of an alleged Fourth Amendment violation bears the initial burden of rebutting
the presumption of proper police conduct.  Young v. State, 283 S.W.3d
854, 872 (Tex. Crim. App.) (per curiam), cert. denied, 130 S. Ct. 1015
(2009).  A defendant meets this burden by demonstrating that the challenged search
or seizure occurred without a warrant.  Id.  The burden then shifts to
the State to prove that the search or seizure was reasonable under the totality
of the circumstances.  Amador, 221 S.W.3d at 672–73.  This burden may be
satisfied by a showing that one of the statutory exceptions to the warrant
requirement is met.  See Torres v. State, 182 S.W.3d 899, 902 (Tex.
Crim. App. 2005).  In this case, it is undisputed that no warrant was issued
for appellant’s arrest.  As a result, the State bore the burden of establishing
the reasonableness of appellant’s detention and arrest.  See Young, 283
S.W.3d at 872; Amador, 221 S.W.3d at 672–73.  

2.     
Consensual Encounter Versus Investigative Detention

Appellant contends the police lacked reasonable
suspicion to believe he drove while intoxicated because no officers observed
him driving and appellant does not match the physical description provided by
White to the 911 dispatcher.  For these reasons, appellant argues he was unlawfully
detained either in his garage or in the area outside his home.  

There are three distinct categories of interactions
between citizens and police officers: encounters, investigative detentions, and
arrests.  State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); Mount
v. State, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no
pet.).  Not all interactions between citizens and the police implicate
constitutional protections against unreasonable searches and seizures.  See
Florida v. Bostick, 501 U.S. 429, 434 (1991); Hunter v. State, 955
S.W.2d 102, 104 (Tex. Crim. App. 1997).  Each citizen-police interaction must
be evaluated on its own terms.  State v. Garcia-Cantu, 253 S.W.3d
236, 243 (Tex. Crim. App. 2008).  A consensual encounter occurs when a police
officer approaches an individual in a street or other public place and asks if
the person is willing to answer some questions.  Perez, 85 S.W.3d at
819.  Police officers are also free to approach an individual’s residence or
vehicle and ask to speak with them.  See Garcia-Cantu, 253 S.W.3d at 243. 
No constitutional rights are implicated in such situations.  Perez, 85
S.W.3d at 819.  So long as the citizen remains free to disregard the officer’s
questions or go about his business, the encounter is consensual, and reasonable
suspicion is unnecessary.  St. George v. State, 237 S.W.3d 720, 726
(Tex. Crim. App. 2007); McCraw v. State, 117 S.W.3d 47, 51 (Tex.
App.—Fort Worth 2003, pet. ref’d).  

An investigative detention is a confrontation between
a police officer and a citizen in which the citizen yields to a display of
authority and is temporarily detained for purposes of an investigation.  Cantrell
v. State, 280 S.W.3d 408, 412 (Tex. App.—Amarillo 2008, pet. ref’d).  A
person yields to an officer’s display of authority when a person would not feel
free to leave and terminate the encounter.  Johnson v. State, 912 S.W.2d
227, 235 (Tex. Crim. App. 1995).  Investigative detentions are authorized when an
officer has reasonable suspicion to believe an individual is involved in
criminal activity.  Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim.
App. 2002).  Reasonable suspicion exists if, under the totality of the
circumstances, the detaining officer has specific articulable facts that, when
combined with reasonable inferences, would lead him to reasonably suspect that
a particular person will soon be or has been engaging in criminal activity.  Id.;
State v. Rudd, 255 S.W.3d 293, 299 (Tex. App.—Waco 2008, pet. ref’d).  

            The trial court
entered the following relevant written findings of fact following the
suppression hearing:[1]
After obtaining a description of the Taurus’s driver from White, Officer Daniel
approached appellant’s open garage and asked those assembled in the garage who
drove the Taurus.  A few moments later, appellant responded that he drove the
vehicle.  Officer Daniel, who did not enter the garage, then asked appellant to
come outside and speak with him in the driveway.  Appellant voluntarily
complied, without being forced or coerced,[2]
and accompanied Officer Daniel to White’s vehicle where White identified
appellant as the Taurus’s driver.  By this time, Officer Bartlett had arrived
at the scene and began speaking with appellant.  Officer Bartlett detected a
strong odor of alcohol coming from appellant and observed that appellant’s eyes
were glassy and his speech was slurred.  Officer Bartlett then administered
three field-sobriety tests, which yielded several signs of intoxication.  

After reviewing these facts under the totality of the
circumstances, we conclude the initial interaction between appellant and
Officer Daniel constituted a consensual encounter.  Following his conversation
with White, Officer Daniel was free to approach appellant’s open garage,
inquire who had been driving the Taurus, and ask to speak with appellant after
appellant acknowledged driving the vehicle.  See Perez, 85 S.W.3d at 819
(concluding interaction between police officer and appellant where officer
followed appellant into an apartment complex and knocked on appellant’s door to
investigate a reported purse-snatching constituted a consensual encounter); see
also Garcia-Cantu, 253 S.W.3d at 243 (recognizing police officers are free
to approach a residence to ask to speak with an individual and that such
conduct does not constitute a seizure until the officer engages in coercive,
offensive, or threatening conduct).  Nothing in the record indicates that
appellant was compelled to exit his garage due to the threatening presence of
several officers, a display of a weapon or physical touching by Officer Daniel,
a display of authority or control by the activation of a siren or patrol car
overhead lights, or any indication through Officer Daniel’s words or tone of
voice that appellant could not refuse Officer Daniel’s request to leave the
garage and speak to him.  See Koteras v. State, No. 14-09-00286-CR, 2010
WL 1790808, at *4 (Tex. App.—Houston [14th Dist.] May 6, 2010, no pet.) (mem.
op., not designated for publication) (listing several factors that may indicate
a police-citizen interaction is a seizure rather than a consensual encounter)
(citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)).  Because
the initial interaction between Officer Daniel and appellant was a consensual
encounter, no reasonable suspicion was necessary for Officer Daniel to approach
the garage and ask to speak with appellant.  See St. George, 237 S.W.3d
at 726.  Accordingly, the interaction between appellant and Officer Daniel did
not constitute an unlawful detention.  

Appellant’s Fourth Amendment rights were not
implicated, and no reasonable suspicion was required, until Officer Bartlett
became involved in the investigation and administered field-sobriety tests.  See
Rudd, 255 S.W.3d at 298 (noting that an encounter escalates to an
investigative detention when an officer obtains reasonable suspicion to believe
an individual drove while intoxicated and then conducts field-sobriety tests). 
Appellant contends no reasonable suspicion was present because none of the
officers involved in the arrest observed him driving.  Reasonable suspicion,
however, may be supplied by information acquired from another person and need
not arise from an officer’s personal observations.  Brother v. State,
166 S.W.3d 255, 257 (Tex. Crim. App. 2005) (involving situation where private
citizen remained in contact with 911 dispatcher while following suspected drunk
driver).  

Here, Officer Bartlett knew White had followed appellant
to his present location and remained in contact with the 911 dispatcher until
police arrived at his location.  White was willing to identify himself, remain
on the telephone, follow the suspect, and stay at the scene to identify the
suspected drunk driver.  This gives significant weight to the information
provided by White to the police.  See Reesing v. State, 140 S.W.3d 732,
737 (Tex. App.—Austin 2004, pet. ref’d) (involving facts similar to this case);
see also In re J.D.B., 209 S.W.3d 708, 710 (Tex. App.—Houston [14th
Dist.] 2006, no pet.) (recognizing information provided to the police by a
citizen is inherently credible and reliable when the citizen’s only contact
with the police is having witnessed the commission of a criminal act).  Appellant
also informed the police he had recently returned home after driving the Taurus
and White positively identified appellant as the Taurus’s driver.[3]  Officer
Bartlett detected several indicators that appellant was intoxicated.  Taken
together, these facts are sufficiently reliable to support a conclusion that
appellant drove while intoxicated, thus providing Officer Bartlett with
reasonable suspicion to detain appellant.  See Garcia v. State, 296
S.W.3d 180, 185 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (concluding
police had reasonable suspicion to believe appellant drove while intoxicated
based on private citizen’s eye-witness account of erratic driving and officer’s
own observations).  Accordingly, the interaction between appellant and Officer
Bartlett did not constitute an unlawful investigative detention.  

 

3.      Appellant’s
Warrantless Arrest

Appellant further contends he was illegally arrested because
the police did not obtain a search warrant and had no probable cause to arrest
appellant, and that none of the statutory exceptions to the warrant requirement
apply in this case.  See Torres, 182 S.W.3d at 901 (recognizing that,
under Texas law, warrantless arrests are proper only when (1) probable cause
for the arrest exists with respect to the individual in question and (2) the
arrest falls within one of the statutory exceptions to the warrant
requirement).  

a.      Probable
Cause

            Probable cause
for a warrantless arrest exists when the arresting officer possesses reasonably
trustworthy information sufficient to warrant a reasonable belief that an
offense has been or is being committed.  Paulea v. State, 278 S.W.3d
861, 864 (Tex. App.—Houston [14th Dist.] 2009, pet. ref’d) (citing McGee v.
State, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003)).  The State bears the
burden of proving probable cause to support a warrantless arrest.  Id.
at 865.  We review de novo whether probable cause exists to justify a
warrantless arrest after considering the totality of the circumstances
surrounding the arrest.  Id.  

As discussed earlier, Officer Bartlett possessed
sufficient facts to form a reasonable inference that appellant drove while
intoxicated based on the background facts provided by White and appellant and
appellant’s performance during the field-sobriety tests.  See id.
(defining “probable cause”); see also Diaz v. State, No. 05-09-00750-CR,
2010 WL 1714001, at *2 (Tex. App.—Dallas Apr. 28, 2010, no pet.) (not
designated for publication) (concluding officer had probable cause to arrest
appellant for driving while intoxicated based on results of field-sobriety
tests, appellant’s breath smelling of alcohol, and appellant’s unsteady
balance); Johnson v. State, No. 14-07-00818-CR, 2008 WL 5085561, at *2
(Tex. App.—Houston [14th Dist.] Nov. 25, 2008, pet. dism’d) (mem. op., not
designated for publication) (“[A]ppellant’s failure of the field[-]sobriety
test also provided a basis for probable cause to arrest him.”).  

b.      Exception
to the Warrant Requirement

            Under Texas law, warrantless
arrests are authorized only in limited circumstances outlined primarily in Chapter
14 of the Code of Criminal Procedure.  Swain v. State, 181 S.W.3d 359,
366 (Tex. Crim. App. 2005).  The State contends appellant’s arrest is justified
under article 14.03(a)(1) of the Code of Criminal Procedure, which authorizes
the warrantless arrest of an individual found in a suspicious place under
circumstances reasonably showing the individual committed a breach of the
peace.[4] 
See Tex. Code Crim. Proc. Ann.
art. 14.03(a)(1) (Vernon Supp. 2009).  For a warrantless arrest to be justified
under article 14.03(a)(1), the totality of the circumstances must show (1) the
existence of probable cause that the defendant committed a crime and (2) the
defendant must be found in a suspicious place.  Dyar v. State, 125
S.W.3d 460, 468 (Tex. Crim. App. 2003).  Having earlier concluded that probable
cause existed to arrest appellant, we must now determine whether appellant was
found in a suspicious place.  

Few places, if any, are inherently suspicious.  Id.
at 464–65.  The determination of whether a place is suspicious requires a
highly fact-specific analysis.  Id. at 468.  Any place may become
suspicious when an individual at the location and the accompanying
circumstances raise a reasonable belief that the individual committed a crime
and exigent circumstances call for immediate action or detention by the police. 
Swain, 181 S.W.3d at 366; Hollis v. State, 219 S.W.3d 446, 459
(Tex. App.—Austin 2007, no pet.).  A key factor used to justify the
determination of a place as suspicious is whether the time frame between the
crime and the apprehension of the suspect is short.  See Dyar, 125
S.W.3d at 468.  

            Under the
particular facts of this case, we conclude that the area outside appellant’s
home where he was arrested was a suspicious place because the police could
reasonably believe, based on the surrounding circumstances, that appellant
drove while intoxicated and it was necessary to take prompt action in order to
ascertain appellant’s blood-alcohol level.  See Gallups v. State, 151
S.W.3d 196, 201–02 (Tex. Crim. App. 2004) (concluding appellant’s home, where
he was arrested for driving while intoxicated shortly after leaving his wrecked
vehicle at the scene of an accident, was a suspicious place and that prompt
action was needed to ascertain appellant’s blood-alcohol level).  The short
amount of time between appellant’s arrival at his home and Officer Daniel’s
arrival at the scene—approximately ten minutes—also supports a conclusion that
appellant was found in a suspicious place.  See Dyar, 125 S.W.3d at 468;
see also Cribley v. State, No. 04-04-00047-CR, 2005 WL 1812585, at *1–2
(Tex. App.—San Antonio Aug. 3, 2005, no pet.) (mem. op., not designated for
publication) (affirming appellant’s conviction for driving while intoxicated
after determining appellant’s home was a suspicious place because appellant
returned home shortly after rear-ending another driver’s vehicle and was
arrested at home an hour later); Sandoval v. State, 35 S.W.3d 763, 768–69
(Tex. App.—El Paso 2000, pet. ref’d) (concluding appellant’s backyard to be a
suspicious place and recognizing warrantless arrest was necessary because
“testing for alcohol is a time-sensitive matter”).  

Because the totality of the circumstances show that
the police possessed probable cause, appellant was found in a suspicious place,
and exigent circumstances called for immediate action, we conclude appellant’s
warrantless arrest is justified under article 14.03(a)(1).  See Tex. Code Crim. Proc. Ann. art.
14.03(a)(1); Swain, 181 S.W.3d at 366; Dyar, 125 S.W.3d at 468.  Accordingly,
no search or arrest warrant was necessary in this case, and appellant was not
subjected to an unlawful arrest.  

Conclusion 

After reviewing the record in the light most
favorable to the trial court’s ruling, we conclude the trial court did not err
in denying appellant’s motion to suppress evidence because its ruling is
supported by the evidence and legally correct.  See Iduarte, 268 S.W.3d
at 548.  We overrule each of appellant’s issues and affirm the judgment of the
trial court.  

 








                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Justices Yates,
Seymore, and Brown.

Publish
— Tex. R. App. P. 47.2(b).









[1]
Because these findings are supported by the record, we defer to them in our
review.  See Iduarte, 268 S.W.3d at 549; Amador, 221 S.W.3d at
673.  





[2]
During the suppression hearing, appellant elicited testimony that Officer
Daniel physically entered the garage and that none of the individuals in the
garage felt they could decline to answer Officer Daniel’s questions.  Officer
Daniel testified that he did not enter the garage or threaten or coerce anyone
to answer his questions, and that appellant voluntarily exited the garage.  As
the sole judge of the credibility of the witnesses, the trial court was free to
believe the version of events presented by Officer Daniel.  See Wiede,
214 S.W.3d at 24–25.  We defer to the trial court’s determination.  See
Amador, 221 S.W.3d at 673.  





[3]
Appellant insists White’s identification of appellant is unreliable because
appellant does not match the description given by White to the 911 dispatcher. 
White testified that he initially described the driver as a thirty-five to
forty-five year old Hispanic male and may also have described the driver as
5’8” to 5’10” tall and weighing 160–180 pounds.  During cross-examination, White
acknowledged that he may have described the driver as a white male between 6’1”
and 6’2” tall weighing 180 pounds.  Appellant is a 5’9” Hispanic male weighing
140 pounds.  The trial court found that White observed the suspected drunk
driver to be a Hispanic male approximately thirty-five to forty-five years of
age.  As the sole judge of witness credibility, the trial court was free to
determine which description White provided to the 911 dispatcher.  See Wiede,
214 S.W.3d at 24–25.  We defer to this finding of historical fact.  See
Iduarte, 268 S.W.3d at 549.  We also note that White’s identification of
appellant as the Taurus’s driver is supported by appellant’s admission to the
police that he recently returned home after driving the Taurus.  





[4]
Driving while intoxicated constitutes a breach of the peace.  See Miles v.
State, 241 S.W.3d 28, 42 (Tex. Crim. App. 2007); Gallups v. State,
151 S.W.3d 196, 201 (Tex. Crim. App. 2004).